## FIRST NATIONAL BANK OF DALTON *v.* BLACK *et al.*

1. When a bank holds a mortgage upon property which is likewise subject to a lien for taxes that is about to be enforced by levy and sale of the property, and, through its authorized agent, agrees to advance the money to pay such taxes, on condition that another party, who was not liable for the taxes, will give a note payable to the bank for the money so advanced, under a promise that he will never be called on to pay the note but that the proceeds of the sale of the property realized on the mortgage will be first applied to the payment of the taxes; and when the property is thereafter sold and the bank appropriates the proceeds of the sale to the payment of the mortgage without applying any part thereof to the taxes, the bank is not entitled to recover on the note.

2. A renewal of the note by the maker, after the sale of the property, under the same promise and without any new consideration, does not render him liable on such renewed note.

Argued June 15, — Decided July 27, 1899.

Complaint. Before Judge Fite. Whitfield superior court. December 2, 1898.

*R. J. & J. McCamy*, for plaintiff.
*Shumate & Maddox*, for defendants.

LEWIS, J. The First National Bank of Dalton brought suit, in Whitfield superior court, against John Black and S. B.

Felker, on a promissory note for one hundred and seventy-five dollars and forty-six cents principal, executed July 22, 1896, made by the defendants, and payable to the order of the plaintiff, reciting that it was for value received.　To this action the defendant, John Black, filed a plea, admitting the execution and delivery of the note, but denying his liability thereon. The answer set up substantially the following facts:　The defendant was superintendent of the Dalton Compress Company, a corporation of said county, and R. I. Peak was vice-president of said corporation, and either cashier or president of the plaintiff company, and as such officer entrusted with the management of the business of the bank.　The bank held a note against the compress company for one thousand dollars, which was secured by mortgage executed by the compress company, covering the lands upon which was located its plant, consisting of buildings, compress engine, etc.　The taxes of the State of Georgia, and the County of Whitfield, and the City of Dalton, for the year of 1893, against the said compress company were due and unpaid, and the City of Dalton had had a tax fi. fa. issued and levied upon the property.　These taxes were a lien upon the property, superior to the lien of the bank's mortgage, and in order to raise the money to pay off the taxes, Peak, the financial manager of the bank, requested the defendant to execute a note to the bank for an amount sufficient to pay the taxes, Peak assuring defendant at the time that he would not be called upon to pay the note, that he only wanted to keep the accounts of the bank straight on the books, and assuring defendant further that whenever the mortgage should be foreclosed, and the property of the compress company be sold by virtue of the mortgage fi. fa., or whenever the money should be paid to satisfy this mortgage, a sufficient amount of the money so realized, to pay off defendant's note, would be so applied.　Relying upon this promise, the defendant gave the bank a note, and the bank paid up the taxes due to the State, County, and City, and took a receipt therefor.　The mortgage was subsequently foreclosed, and a mortgage fi. fa. was issued and levied upon the said property of the compress company, it was sold thereunder, and the proceeds of the sale went into

the hands of the bank, and by it were applied entirely to its mortgage. In this transaction Peak represented the bank. Defendant's original note remained in the bank for some time, when Peak approached the defendant for a renewal thereof, stating to him he had forgotten to comply with his promise about taking up the note with the proceeds of the sale of the property, and to cancel the first note, that it was still necessary to have a note covering the amount of principal and interest due on the first note, in order to keep the accounts of the bank straight, that the note was necessary to balance the amount of cash paid upon taxes, as aforesaid; and requested defendant to execute a new note in lieu of and in renewal of the first, to represent the money paid out, and promised defendant that he would never be called upon to pay the note. Upon this assurance the note sued upon in this case was given. On the trial of the case the testimony introduced in behalf of the defendant substantially established the allegations of the answer, and was sufficient to authorize a jury to conclude that these allegations were the truth of the case. The other defendant, S. B. Felker, also adopted the plea of Black, and made the same his answer. The jury returned a verdict for the defendant. Whereupon the plaintiff filed a motion for new trial, and excepts to the judgment of the court overruling the motion.

1. Exception is taken in the motion, that the verdict is contrary to law and evidence, and that the court erred in charging the contention of defendants (as substantially hereinbefore set forth), and added that if this contention was not true, the jury should find for the plaintiff the amount of its principal, interest, and attorney's fees, the burden of proof being on the defendant to establish his plea by proof. These grounds raised the question as to whether or not the plea set up by the defendants' constituted a valid legal and equitable defense to this cause of action. It was certainly admissible to introduce testimony showing what was the real consideration of this note. There was nothing in the parol testimony introduced upon the subject that contradicted its terms, the only recital of consideration appearing upon the face of the note being simply "value received." It will be noted in the first place that the

defendants in this case were in nowise individually or jointly liable for the payment of the taxes due by the compress company, that company itself being liable for the taxes; and the only property on which existed a lien for taxes due the City and State and County was the property of the company itself, and not the property of any of its officers or members. It is true that these taxes were not due by the bank, but it is also true that it was a debt which the bank had a direct interest in having cancelled. The bank held a mortgage upon the property that had been levied upon by a lien superior in dignity; and manifestly the bank could have recovered on its mortgage none of the proceeds of the sale until these taxes and the costs of such sale had been fully satisfied. There was sufficient reason, then, and consideration moving the bank, or its authorized officers, to make the promise to the defendants that if they gave the note for the taxes they would never have it to pay, but that the same would be paid by the bank out of the proceeds of the sale it might thereafter recover on its mortgage. Upon the faith of that promise the note was given. The bank failed to comply with its obligation; and to compel the defendants now to pay the note, after the bank had realized its money on its mortgage, and after its payment of the taxes was made for its own protection and benefit, would be, in our judgment, sanctioning the perpetration of a fraud, and would be enforcing a contract without any consideration whatever. There is no contradiction in the testimony that Peak, who entered into this negotiation with the defendants, was the actual financial manager of the bank, and as such had the power to take care of its interest when its rights were involved, as they were in this case, by a levy upon the property on which the bank had a lien or a claim, and to protect which it was necessary to pay off the lien that had priority. The fact that Peak was also an officer in the compress company can make no difference, for there can be no question under the evidence that in this transaction he was acting in the interest of the bank.

2. It is insisted, however, that the renewal of the original note, made by the defendants to the bank after a sale of the property under the mortgage fi. fa., was full notice to the de-

fendants that it had been sold with a waiver by them of this defense, and that they are now estopped from setting up this plea to an action on such renewed note. When such a note is given by virtue of a compromise or settlement between debtor and creditor, such a settlement itself might constitute a valid consideration for it, and when made in good faith, the party will be estopped from going behind the settlement, and seeking to show the original claim was without consideration. Such was the ruling of this court in the case of *Tyson* v. *Woodruff*, ante, 368; but from the opinion in that case it will be seen that it is also recognized as a true doctrine that a bare renewal by giving a new note therefor, without any additional consideration, and under the same promise that induced the original obligation, would not amount to such a settlement as would estop the maker of the renewed note from defending it because of no consideration for the original obligation.

There are several other grounds in the motion, complaining of error in the court in charging the law of fraud as embodied in Civil Code, §§ 4025, 4026, 4028, etc. We think the law is applicable to the facts in this case; but even if not, the propositions complained of being correct as abstract principles of law, and the motion itself failing to indicate wherein giving them in charge operated to the injury of the movant, this court will not reverse a judgment refusing a new trial on such grounds.

It is further complained in the motion for new trial that the court erred in refusing to charge, as requested by plaintiff's counsel, that if at the time the money was first furnished to pay off the taxes the defendants and Peak were stockholders of the compress company and interested in saving its property from sale, and all tried to get the money from the bank and pay the taxes, and the bank advanced the money, nothing said by Peak to Black and Felker about not having to pay it back would bind the bank; and also in refusing to charge that if the jury found the note was renewed after the property of the compress company was sold by the sheriff, they should find for the plaintiff. We think the views expressed above in this opinion fully cover these exceptions. Besides, it appears from the record that Peak was the man that first approached the de-

fendants with a view of giving the note in question, and we think the record fairly discloses he was really acting for and in the interest of the bank. The only remaining ground in the motion for new trial is, that the court erred in failing to charge that if Black was superintendent of the Tennessee River Compress Company, which succeeded the Dalton Compress Company and had control of its funds, he could have applied the money coming into his hands as superintendent to pay this note, and if he failed to do so, the jury should find for the plaintiff. We can not possibly see by what authority Black, as an officer of another corporation, could take its funds, from whatever source derived, and apply them to the debt of a defunct corporation. Besides, this could not possibly affect the obligation of the bank to cancel this note, and pay the taxes with the proceeds of particular property which went into its hands.

After a careful review of the entire record, we think a clear equitable defense was set up by the plea in this case and established by the testimony, and accordingly affirm the judgment refusing a new trial.

*Judgment affirmed.　All the Justices concurring.*