## EVANS et ux. v. DUKE.*

### S. F. No. 2193; July 17, 1902.

#### 69 Pac. 688.

**Vendor and Vendee—Fraud—Limitation of Actions.—Defendant in an Action** for balance of purchase price of a fruit farm is not barred by limitations from defending, and recovering by cross-complaint money paid, on the ground of fraudulent representations, not having till then discovered the misrepresentation as to amount of land, and become convinced of the falsity of plaintiff's representation as to the amount of profits he had realized from the land, and his representation, repeated year after year, that the reason defendant did not obtain such profits was due to his want of experience.

**Vendor and Vendee—Rescission.—False Representations of Vendor** that a certain number of acres of the land were under cultivation, and that he had for a number of years obtained certain profits from it, which were fifteen per cent of the purchase price, are ground for rescission.

**Vendor and Vendee—Rescission.—Judgment for Defendant in** action for balance of purchase money of land, which rescinds the contract, fixes the amount to be paid defendant, he being charged with

---

*For subsequent opinion in bank, see 140 Cal. 22, 73 Pac. 732.

rent to date, with interest thereon, and plaintiffs with the amount paid, with interest, and provides that on payment by them he shall deliver possession, subject to his right to enter to remove growing crops, empowers them, by paying the judgment, to prevent his retaining possession while they are paying interest.

APPEAL from Superior Court, Santa Cruz County; Lucas F. Smith, Judge.

Action by Hugh Evans and wife against W. H. Duke. Judgment for defendant. Plaintiffs appeal. Affirmed.

Joseph H. Skirm for appellants; Benj. K. Knight and Chas. M. Cassin for respondent.

PER CURIAM.—On August 30, 1893, the plaintiffs and defendant entered into a contract in writing by which the plaintiffs agreed to sell to the defendant certain real estate and some personal property thereon for the sum of $12,555, of which sum defendant paid on February 15, 1894, the sum of $6,310, with interest at nine per cent from the date of the contract, the remainder to be paid in three annual payments, to be made on the first day of January in each of the years of 1895, 1896 and 1897, with interest at six per cent. The other installments remaining unpaid, this action was brought by the plaintiffs to recover them, and a strict foreclosure was demanded. The defendant answered, and also filed a cross-complaint in which he alleged that he was entitled to and had rescinded said contract on August 9, 1898, for fraud on the part of the plaintiffs, and prayed judgment for the sum of $6,910 alleged to have been paid by him under said contract, and certain taxes and interest, less the rental value of said land. The alleged fraud consisted of certain representations alleged to have been made in August, 1893, and afterward. These representations were (1) that the land and personal property were of the value of $12,555; (2) that the yearly income from the fruit grown on said land had been for several years not less than $3,000 per annum; (3) that in said premises were included not less than sixty acres of cultivated land—forty acres thereof in fruit, and twenty acres thereof under cultivation for the raising of hay; (4) that the apples grown thereon had brought and would continue to bring between $1 and $1.25 per box; (5)

that the grape crop of 1893 would bring $1,000; (6) that the income from said premises would net at least fifteen per cent on the $12,555, judging from what it had netted in the past; and (7) that the reason why they wished to sell said property was that Mrs. Evans was an invalid, and by reason thereof they were compelled to reside nearer to Santa Cruz, so that she could receive proper medical attention. It was then alleged that the value of the land and personal property did not exceed $6,910; that the yearly income from the fruit had never exceeded $800; that there never had been more than thirty-five acres of land under cultivation; that the apples had never averaged more than fifty cents per box, and would not average any greater sum; that the said grape crop did not bring more than $200; that the income from said premises had not been and would not be more than one per cent per annum on $12,555; that the first year's income did not net anything, and did not exceed $800; that defendant apprised plaintiffs of that fact, and that plaintiffs stated to him that the reason why the same had not been more profitable to him was that he was inexperienced in fruit-raising, that it would take him three or four years to become experienced, and that after he had such experience the income from said premises would be as plaintiffs had represented to him; that the annual income from said premises from 1893 to and including 1897 did not equal the expenses; that in each of said years defendant informed plaintiffs that said premises did not net him anything at all; and that plaintiffs on each occasion replied as at first. Defendant further alleged that he had not had any prior experience in fruit-raising; that he knew nothing of the productiveness and quality and quantity of land; that he was ignorant of land values, and was not familiar with said tract of land; that he was almost totally deaf, which made it easy for designing persons to obtain an advantage over him in business transactions, and that he and the plaintiffs had been for many years intimate friends; and that he had implicit confidence in them. It was further alleged, to conform to the evidence, that these representations were not discovered by defendant to be fraudulent until the month of June, 1898. All these allegations of fraud were denied in the answer to the cross-complaint. Upon the trial a jury was called, and ninety-seven special issues were submitted to it,

and answered, and these, with few exceptions, were adopted by the court, and judgment thereon was rendered for the defendant, rescinding the contract of purchase. Plaintiffs' motion for a new trial was denied, and they appeal from the judgment, and from the order denying a new trial.

1. Appellants contend that the court erred in overruling their demurrer to the amended cross-complaint. This demurrer presented the question whether the cause of action therein stated was barred by the statute of limitations. The contract of sale was made August 30, 1893. The complaint was filed February 5, 1898. Notice of rescission of the contract was given August 9, 1898. The misrepresentation as to the quantity of land under cultivation was not discovered until June, 1898, and he was then convinced that the representation in regard to the profits represented to have been obtained by the plaintiff, and the reason for the failure of defendant to realize them, were both false and fraudulent. The discovery of the misrepresentation as to the quantity of land in fruit and of that cultivated for raising hay was accidental, and appears not to have been caused by suspicion of the honesty and truthfulness of the plaintiff. He knew he had been disappointed in results, but as to said profits he was deceived from year to year by the assurance that his failure to secure them was owing to his want of experience. A party who artfully continues his deception from year to year, and thus prevents an early discovery of his fraud, cannot be heard to insist that his victim is without remedy because he did not sooner discover it. Nor is this the ordinary case for relief upon the ground of fraud, which must be commenced within three years from the date of the fraud, or from the discovery of the facts constituting it. Here the plaintiff who procured the fraudulent contract seeks to enforce its executory provisions, and is thus asking affirmative relief. The statute of limitations does not bar the defendant from objecting to the validity of the contract upon the ground of fraud. "It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of the fraud": Hart v. Church, 126 Cal. 479, 77 Am. St. Rep. 195, 58 Pac. 913. In the same case it was further said: "It is true, as appellant contends, that where a party

seeks rescission of a contract he must act with promptness, and that the question as to what is or is not a prompt effort to rescind must depend in each case upon its own peculiar facts.'' One who makes positive assertions without warrant cannot excuse himself by saying that the other party need not have relied upon them, unless the facts represented were equally or at least reasonably within the power of the other party to ascertain, but he must show that his representations were not in fact relied upon. ''Every contracting party has an absolute right to rely upon the statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith'': Dow v. Swain, 125 Cal. 674, 683, 58 Pac. 271, and cases there cited; also Bank of Woodland v. Hiatt, 58 Cal. 234; Sutherland on Damages, 586 et seq., and cases there cited. It was held in Fishback v. Miller, 15 Nev. 428, that, where representations made by a seller are shown to be material and false, it is for him to show that the buyer did not rely upon them, and that without them the purchase would have been made. In Porter v. Fletcher, 25 Minn. 493, it was held that, where the representation related to the size and location of lots which were the subject of negotiation, the plaintiff could not be charged with negligence for relying upon the representations, instead of consulting the recorded plat. It is too obvious to even require statement that the profits that had been realized from the land, and the value of the property, measured by such profits, were fully and exclusively within the knowledge of the plaintiffs, and were unknown to the defendant or to any other person. The value of the premises, which is often the mere expression of opinion, here professed to be based upon the net income of the land for a series of years, and therefore the statement that the net income would be fifteen per cent on $12,555 was something more than the expression of a mere opinion. The demurrer to the defendant's cross-complaint was properly overruled.

2. Appellants contend that the evidence fails to show any fraud on the part of the plaintiffs either before or after the

agreement was made. In other words, it is contended that the evidence does not sustain the findings in that behalf. As hereinbefore stated, a jury was called, and there were submitted to it ninety-seven special issues, covering every allegation of the pleadings and every alleged fraudulent representation, and the answers made by the jury fully sustain the allegations of the cross-complaint. These answers, with some modification of a few of them, were adopted by the court, and the findings of the court fully sustain the judgment. That the evidence was conflicting is clear, but in view of the fact that the jury, after hearing the evidence and inspecting the premises, found that each of the material representations charged to have been made by the plaintiff were made, and were fraudulent, and that these findings were approved by the court, it is not necessary that we should further discuss the evidence.

3. Appellants contend that the court erred in permitting the defendant to amend his cross-complaint to conform to the evidence. There were four of these amendments, each embodied in the order of the court, after the evidence was all submitted. These orders thus made by the court are equivalent to findings of the several facts to which they relate, and the rule relating to conflicting evidence should be applied. We think that each of these amendments was justified by the evidence and that the discretion to grant them was not abused.

4. It is said by counsel for appellants that there is no evidence that Mrs. Evans was guilty of any fraud. The record does not show whether she had any interest in the property other than as wife. She was, however, joined with her husband as plaintiff in the action, and was a party to the contract upon which the action was based, and did not repudiate any of the representations of her husband; nor does it appear that any objection was made in the court below to the judgment upon the ground that she had no interest in the property, and had not been guilty of any fraud.

5. It is contended by appellants that the judgment is unjust, in that defendant is allowed to retain possession of the property, while they are charged interest on the amount of the judgment against them. The judgment, after rescinding the contract and fixing the amount to be paid to the defendant, provides that, upon payment by the plaintiffs to

defendant and cross-complainant of the amount specified, the defendant should deliver possession of the personal property, "and also deliver to said plaintiffs the said land and premises described in said agreement, and the possession thereof, subject to the right of the cross-complainant to enter and use said premises for the purpose of removing therefrom all crops now growing thereon." The judgment recites the basis upon which the amount of the judgment was ascertained, namely, plaintiffs are charged with the amount paid on the purchase with interest, and the cross-complainant with rent of the property down to the date of the judgment at an annual rate, with interest thereon. Upon payment of the amount of the judgment the property is to be at once delivered, with the privilege to the defendant of entering to remove the crop then growing. It is therefore within the power of plaintiffs to secure the right to re-enter at once, and thus protect themselves against any possible hardship such as that suggested, even if the judgment would bear the construction given it by the plaintiffs—a point we have not considered.

The judgment and order appealed from are affirmed.