PAYNE et al. v. BEAUMONT et al.*
(No. 6788.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 25, 1922. Rehearing Denied Nov. 15, 1922.)

1. Appeal and error ⊃866(3)—Direction of verdict for plaintiffs raises fundamental error.

The instruction of a general verdict for plaintiffs raises a fundamental error, requiring the appellate court to ascertain by a very careful examination if the pleadings and evidence support such ruling.

2. Vendor and purchaser ⊃52—Legal title in vendor until all purchase money paid.

The legal title remains in the vendor until all the purchase money is paid.

3. Specific performance ⊃4—Vendor and purchaser ⊃296 — On purchaser's default in payment of purchase price, vendor may either sue to recover the land or sue for specific performance.

On purchaser's default in payment of purchase price, the vendor may sue to recover the land on his legal title or may elect to sue for specific performance; the contract remaining executory until payment of purchase price.

---

⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused January 3, 1923.

4. Limitation of actions ⊚⟹76(1)—Running of statute not interrupted by tacking disabilities of heirs.

Where purchaser of land died after the purchase, if the statute of limitations began to run during purchaser's lifetime against his defense of fraudulent misrepresentations by vendor, the running of the statute could not be interrupted by tacking on any disabilities of minority or otherwise of his heirs.

5. Vendor and purchaser ⊚⟹42 — Purchaser's heirs, who executed renewal purchase-money notes without knowledge of fraud inducing original contract, did not waive such fraud.

Purchaser's heirs, who executed renewal purchase-money notes, did not thereby waive the defense of fraud so as to preclude them from defending on such ground in an action on the notes, where they had no knowledge of the fraud.

6. Judgment ⊚⟹713(1) — Action of probate court in permitting execution of renewal notes held not res adjudicata on issue of fraud.

Action of probate court in permitting purchaser's heirs to execute renewal purchase-money notes was not res adjudicata as to validity of original contract as against contention that it was induced by fraud, where heirs, in procuring such permission and executing renewal notes, had no knowledge of such fraud.

7. Limitation of actions ⊚⟹40(2)—Limitations against defense of fraud not available to party who perpetrated fraud.

The claim of limitations is not available to raise a bar against a party seeking merely to defend his rights against a contract or transaction weighed down with the vice of fraud, sought to be enforced through the courts by the party who perpetrated the fraud.

8. Limitation of actions ⊚⟹40(2)—Limitations against defense of fraud not available in action to enforce contract by vendor who procured it by fraud.

Land contract procured by fraud on the part of vendor is not enforceable in equity at the instance of the vendor, though purchaser remains in silence on the land and endeavors to raise a crop thereon, with knowledge of the fraud, for the period of limitations; limitations against defense of fraud not being available in equity to party who perpetrated it.

9. Bills and notes ⊚⟹139(3)—Consideration of renewal note is the consideration of original.

The real consideration of a renewal note is the consideration of the first, and failure of consideration in the first may be pleaded in action on the renewal note.

10. Estoppel ⊚⟹52 — Elements of "waiver" stated.

To constitute "waiver," there must be an existing right, benefit, or advantage waived, with full knowledge of its existence, with an intention to relinquish such right for a valuable consideration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

11. Evidence ⊚⟹113(19) — Assessment rolls not competent evidence of value of property listed.

Assessment rolls are not competent evidence of the value of property listed thereon.

12. Evidence ⊚⟹265(7) — Defendants' admission held not a waiver of defense of failure of consideration.

In vendors' action on purchase-money notes, in which the answer pleaded total and partial failure of consideration for the execution and delivery of the notes, in that vendors procured the contract by fraudulent representations, defendants' admission, for the purpose of securing the opening and concluding in the introduction of evidence and in argument, that "plaintiffs herein have a good cause of action as set forth in their petition, except so far as it may be defeated in whole or in part by the facts in the answer of these defendants constituting a good defense, which may be established on the trial of the case," *held* not a waiver of the defense of failure of consideration.

### On Motion for Rehearing.

13. Vendor and purchaser ⊚⟹33—Elements of fraud stated.

Fraud of vendor, to make defense of failure of consideration available in action on purchase-money notes, must have consisted of the telling of a deliberate and intentional falsehood as to a material fact, with the intention that it should be acted upon by purchaser, constituting the inducing cause of the purchase.

14. Limitation of actions ⊚⟹41—Plea of limitations available to vendor who procured contract by fraud, as against defendant seeking affirmative relief to offset claim.

In action by vendor, who procured contract by fraud, the plea of limitations, though not available to vendor as against the defense of fraud, in so far as he seeks to enforce executory contract, is available to vendor as a defense, where the defendant, by cross-action, seeks affirmative relief to offset the claim.

Appeal from District Court, Cameron County.

Suit by Mrs. Daisy Beaumont and others against Mrs. Betty H. Payne and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Seabury, George & Taylor, of Brownsville, for appellants.

Graham, Jones, Williams & Ransome, of Brownsville, for appellees.

COBBS, J. This was a suit instituted on May 18, 1921, by Mrs. Daisy Beaumont and her husband, C. W. Beaumont, and J. M. Compton, filing an original petition in which they sue Mrs. Bettie H. Payne, Adlie Owen Payne, Harless Neville Payne, Nora Price Calloway, and her husband, I. A. Calloway, Ernest Bedford Payne, Ollie Mae Payne, and Lyle Payne, and allege Ollie Mae Payne and Ernest Bedford Payne and Lyle Payne are

minors, and Mrs. Bettie H. Payne is sued as the guardian for said minor defendants, said suit being instituted for the purpose of recovering on five promissory notes executed by H. E. Payne on November 20, A. D. 1912, and delivered to Mrs. Daisy Beaumont as part consideration of the purchase price of 160 acres of land described in plaintiff's petition.

Soon after the purchase of said property by said H. B. Payne, who was the husband of Mrs. Bettie H. Payne and the father of the other appellants in this case, with the exception of I. A. Calloway, who was his son-in-law, the said H. B. Payne died intestate, and left surviving him his wife, Bettie H. Payne, and his children as named in this suit, and on or about the 20th day of March, A. D. 1917, Mrs. Bettie H. Payne was appointed guardian of the estates and persons of her minor children, Harless Neville Payne, Nora Price Payne, Ernest Bedford Payne, Ollie Mae Payne, and Lyle Payne, by the county probate court of Cameron county, the county in which H. B. Payne died and was living at the time of his death, and qualified as such guardian, and that thereafter the said Mrs. Bettie H. Payne, acting for herself and as guardian of the estate of her minor children, with permission from the county probate court of Cameron county, and Adlie Owen Payne, acting in his own behalf, entered into a contract with Mrs. Daisy Wilson and J. H. Compton, whereby the amount of said above-described notes and the time of payment were renewed and extended as follows:

"In reply, defendants pleaded total and partial failure of consideration for the execution and delivery of the notes sued on by H. B. Payne, deceased, and also total and partial failure of consideration for the renewal of the notes, and, among other things, pleaded that the said plaintiff, acting through her agent, under such circumstances, falsely represented to the said H. B. Payne that the irrigation system under which said lands were situated and the water conditions with reference thereto were perfect; that ample water was had and could be had at all times for all purposes within a period of six hours after calling therefor over the telephone, and that the soil itself was very productive, and that by reason of the abundant water supply for said land, the actual and reasonable market value of the said land was far in excess of $200 per acre, and that the canal system was financially sound.

"That H. B. Payne relied upon said false representations as to the character and efficiency of the canal system, its ability to furnish and supply water to all the lands under its system, as to the real, actual, and market value of the land in controversy, with and without the irrigation therefor, did enter into contract to purchase said land in controversy; that the La Feria mutual canal system under which the said lands were situated was wholly inefficient in point of capacity to irrigate the lands that it

was under contract at that time to irrigate; that the pumps in said system were inefficient to pump, and the canals were inefficient to carry, a volume of water sufficient to irrigate the lands under said system, which said system was under contract to irrigate; that the said canal system was at that time insolvent and without finances to operate for the purpose of furnishing any water at all, and that the plaintiff and her agents aforesaid well knew said conditions, and falsely represented the same to the said H. B. Payne, who was not familiar with the facts aforesaid.

"Defendants further pleaded, in the alternative and in addition thereto, if it should appear that the reasonable market value or actual value of the lands in controversy at the time of the purchase of the same in its then condition, with its then existing facilities for irrigation, was greater than the sum of $15,500, but less than $32,000, the contract price, then to such an extent and to such an amount there was a partial failure of consideration by reason of the fraud and misrepresentations aforesaid.

"The plaintiffs, in reply, pleaded the statute of two and four years' limitation, and in addition thereto they alleged that these defendants, by reason of having entered into the extension agreement as set out in their original petition, are estopped from pleading the defenses pleaded in their first original amended answer, and they further allege that by reason of the fact that the defendants had been in possession of the land since said extension agreement was executed, and have enjoyed its use and benefit, it would be inequitable for them to be relieved from the binding force and effect of said contract of extension, and that the plaintiffs had no knowledge at the time of the extension that the defendants would assert any plea in bar of plaintiffs' right of recovery on said notes.

"Defendants specially excepted to the plea of two and four years' limitation contained in plaintiffs' first supplemental petition, and also to the plea of estoppel, and alleged that at the time of the execution of said extension agreement they did not know of the material facts and circumstances under which said contract was entered into, the incapacity of said canal system, and that said fraud with reference thereto had been perpetrated upon their deceased husband and father in order to induce him to purchase said land; that, had they known of the fraud that had been perpetrated upon H. B. Payne, deceased, at the time he purchased said land, they would not, under any circumstances, have executed said extension agreement, and that they did not intend to waive the fraud perpetrated upon said H. B. Payne or their right to plead the same in bar of recovery upon the notes in controversy. The pleadings of both parties were unusually full and sufficiently responsive to each other, so we will make no further statement, except as found necessary in the discussion herein.

"The defendants then admitted in open court before the introduction of any of the testimony that plaintiffs herein had a good cause of action, as set forth in their petition, except so far as it might be defeated in whole or in part by the facts set forth in these defendants' answer as constituting a defense to the cause of action pleaded by plaintiffs.

"The defendants, in their first trial amend-

ment, alleged that at the time the said H. B. Payne purchased the land in controversy from plaintiff herein, the said land had no market value in Cameron county, state of Texas.

"The plaintiffs, in reply, pleaded the permission of the probate court and the orders made in connection therewith, giving Mrs. Bettie H. Payne permission to enter into the extension agreement with reference to the notes herein sued on as res adjudicata of the matter set up in defendants' first amended original answer. In reply to the plea of res adjudicata, defendants specially excepted to said plea on the ground that the county probate court was a court of limited jurisdiction, and was without jurisdiction to adjudicate either the matter set up in plaintiffs' petition or the matters alleged in defendants' answer, and that said judgment, if it attempted to do so, was void, and further, it was not known by the court or any of them the alleged fraud committed on their ancestor.

"The trial was before the court with a jury, and at the conclusion of the testimony the appellees filed a motion for a peremptory instruction, which motion was granted by the court, and the court proceeded to enter a judgment for the full amount of the principal, interest, and attorney's fees sued upon, and foreclosure of the lien, and also a personal judgment against the defendant Mrs. Bettie H. Payne and the defendant Adlie Owen Payne."

[1] As the trial court instructed a general verdict for appellees, it raised a fundamental error, though the supposed errors have been properly assigned, requiring us to give a very careful examination of both the pleadings and evidence to support such ruling. The error is raised very fully in various assignments and propositions made by appellants.

[2, 3] It is well, in considering this case, to start out with the general proposition that the legal title remains in the vendor until all the purchase money is paid (White v. Cole, 87 Tex. 500, 29 S. W. 759), and that the vendor may sue to recover the land on his legal title or elect to sue for specific performance of the contract. In this case the latter course was pursued. In such a case the contract is executory so long as the purchase price remains unpaid. Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88; Ogburn v. Whitlow, 80 Tex. 241, 15 S. W. 807; Lanier v. Foust, 81 Tex. 189, 16 S. W. 994.

The proof shows here that the vendees are in possession of the land, under a deed with general warranty, passing also all water rights. It is alleged and shown that fraudulent representations were made to H. B. Payne as to the irrigability of the lands, their value, and the irrigation to be furnished by the irrigation system of the La Feria Mutual Canal Company, a company organized to furnish water sufficient to irrigate all the lands under said system, which included the lands in question, by appellants, by which representations H. B. Payne, deceased, who relied upon such representations, was induced to purchase. Being in posses-

sion under a deed with general warranty, as a general proposition of law, appellees would be released from the payment of the purchase money in a suit seeking specific performance if fraud be established on the part of the vendor at or before the sale, unless in a case were the defect was known to him at the time he purchased. It was provided in the deed, dated November 20, 1912, to their ancestor, under which appellees hold that—

"This sale and conveyance is made subject to the terms and conditions of a certain water contract made by and between the La Feria Mutual Canal Company and the La Feria Land & Irrigation Company, W. V. Fifield, J. L. Wortman, Frank W. Kibbe, and Pierre Wilson, dated April 24, 1909, whereby and wherein the said La Feria Mutual Canal Company covenants and agrees to deliver water for, to and upon the lands in said contract described, including the land hereby conveyed, under and upon the terms and conditions set forth in said agreement. And tho said grantor does hereby sell, transfer and convey unto the said grantee herein named, all of her right, title and interest (as devisee of the said Pierre Wilson) in and to so much water to be furnished to said lands, under said contract, as may be necessary to irrigate the one hundred and sixty (160) acres of land hereby conveyed. Grantor also hereby conveys all other rights, privileges and benefits conferred upon and granted to the said Pierre Wilson, under and by virtue of said water contract, in so far as the same apply to the one hundred and sixty (160) acres of land hereby conveyed, with the full right, power and authority, on the part of the grantee, to enforce, receive and enjoy the benefits thereof."

The proof shows that H. B. Payne, deceased, died intestate on or about the ——— day of October, 1915, leaving surviving him his wife, Bettie H. Payne, and his children named in this suit. The appellee Bettie H. Payne, the surviving widow, was on the 20th day of March, 1917, duly appointed and qualified as the guardian of the persons and estate of the minor children. For a period of more than two years, as will be seen, after the purchase, and up to his death, H. B. Payne, deceased, used, occupied, and cultivated said land without revealing to any one the facts concerning the alleged fraud, or making any demand on his grantor in respect thereto, or demanding in any way relief, other than from time to time requesting to be furnished with water to irrigate with. His mouth, for all those years, as to the alleged fraud, was as a sealed book. And neither Mrs. Payne nor Adlie O. Payne knew anything about the representations that had been falsely made to her husband and their father to induce his purchase. The alleged fraud was not known to them when renewal extension was executed, nor when she secured the order for such authority from the probate court authorizing the execution thereof. She knew during her

husband's life and thereafter they were not getting sufficient water to irrigate with, but knew nothing of the alleged fraudulent representations. At the time of Payne's purchase in 1912 he was a resident of Lamar county, and had not visited the Rio Grande Valley, nor seen the purchased land prior to his purchase, and was unacquainted with its value, quality, or fertility, nor acquainted with its irrigation methods, and capacity of canals for distributing water; nor familiar with the capacity of the pumps, canals, laterals, and flumes that necessarily constituted the La Feria mutual canal system, nor its financial affairs. He was induced by appellees, through their agent, to visit the Rio Grande Valley as a prospective purchaser during the month of July, 1912, and the proof tends to show was induced to purchase the lands upon the fraudulent representations made by appellees, both as to value and irrigability of the lands, upon which he relied in making the purchase of the same, and believed, what was falsely represented to him, that—

"The irrigation system under which said lands were situated, and the water conditions with reference thereto were perfect; that ample water had and could be had at all times for all purposes within a period of six hours after calling therefor over the telephone, and that the soil itself was so very productive, and that by reason of the abundant water supply for said land the actual and reasonable market value of the said land was far in excess of $200 per acre, and that the canal system was financially sound."

"Mrs. Bettie H. Payne testified that they never got sufficient water to irrigate any crops until after the district was organized; did not get any in 1913, 1914, 1915, and 1916; that at the time she executed the extension agreement she did not know that the appellees, acting through their agent, Thomas F. Lee, had fraudulently represented to her husband that the canal system under which the land in controversy was situated at the time her husband bought the same was a perfect system, and that all he had to do to get water was to telephone for it, and that he could obtain it within six hours."

[4-6] Now, the first, and the important, question for disposition is upon the plea of limitation presented by appellees to appellant's defense of fraud. It is undisputed that if the statute of limitations runs in this case, the defense asserted is barred, for limitations in such a case began to run during the life of the ancestor, and it could not be interrupted by tacking on any disabilities of minority or otherwise. We do not think in the absence of the knowledge of the fraud practiced upon the deceased husband and father, they can be held, in the absence of sufficient knowledge, to have waived a defense of which they had no information, and for the same reason there is no merit in the contention that the action

of the probate court is res adjudicata and cuts off the defense.

[7] As in this case, where the defense is a failure of a partial or entire consideration in the sale of land on the ground that the contract and sale was induced by the fraud of the seller, a court of chancery will grant relief therefrom in the proper way. As said above, a contract of this kind, when all the purchase-money notes have not been paid, the same is executory, still open, and not completed. If procured by fraud, the contract is nonenforceable. So in this case, appellees are proceeding in equity, seeking a judgment and foreclosure of a lien upon the land conveyed to the husband and father of appellants through fraudulent means and false representations. If limitations ran in this case against L. B. Payne, deceased, at any time during his life, it would so run from the time the fraud was perpetrated, or from the time the fraud was discovered, or could with diligence have been discovered. But it is not available to raise a bar against a party who is seeking merely to defend his rights against a contract or transaction weighed down with the vice of fraud, sought to be enforced through the courts, by the party perpetrating the fraud. 25 Cyc. pp. 1063, 1064, 1094; 17 R. C. L., p. 745; Rosborough v. Picton, 12 Tex. Civ. App. 113, 34 S. W. 791, 43 S. W. 1033; 39 Cyc. p. 1582–1585, inclusive; 39 Cyc. p. 1921; Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Franco-Texan Land Co. v. Simpson, 1 Tex. Civ. App. 600, 20 S. W. 953; Lovejoy v. Roberts, 35 Tex. 616; Roseborough v. Picton, 12 Tex. Civ. App. 113, 34 S. W. 791, 43 S. W. 1033; Moore v. Hazelwood, 67 Tex. 624, 4 S. W. 215; Blanks v. Ripley, 8 Tex. Civ. App. 156, 27 S. W. 732; Hamburg Bank v. Ahrens, 118 Ark. 548, 177 S. W. 17; Taft v. Myerscough, 197 Ill. 600, 64 N. E. 711; Rutherford v. Carr, 99 Tex. 101, 87 S. W. 815; Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 207; Snow v. Gallup, 57 Tex. Civ. App. 572, 123 S. W. 227; Hart v. Church, 126 Cal. 471, 58 Pac. 910, 59 Pac. 296; Amaker v. New, 33 S. C. 28, 11 S. E. 386, 8 L. R. A. 687; Evans v. Duke (Cal. Sup.) 69 Pac. 688, reversed in bank in 140 Cal. 22, 73 Pac. 732; Louisville Banking Co. v. Buchanan, 117 Ky. 975, 80 S. W. 193, 4 Ann. Cas. 929; Butler v. Carpenter, 163 Mo. 597, 63 S. W. 823; Rhea v. Bagley, 66 Ark. 93, 49 S. W. 492; State of Arkansas v. Brick Co., 98 Ark. 125, 135 S. W. 843, 33 L. R. A. 376; Avritt v. Russell (Ky.) 58 S. W. 811; Blackshear v. Dekle, 120 Ga. 766, 48 S. E. 311; Brown v. Miller, 38 Ill. App. 266; Sherman v. Sherman's Estate, 36 Ill. App. 482; Morris v. Hulme, 71 Kan. 628, 81 Pac. 169; Aultman & Co. v. Torrey, 55 Minn. 492, 57 N. W. 211; Brown v. Bank, 2 Kan. App. 352, 42 Pac. 593; Williamson v. Brown, 195 Mo. 313, 93 S. W. 791; Ft. Smith v. Fairbanks, 101 Tex. 24, 102 S. W. 908; Jackson v.

Plyler, 38 S. C. 496, 17 S. E. 255, 37 Am. St. Rep. 782; Goforth v. Goforth, 47 S. C. 126, 25 S. E. 40; Robinson v. Glass, 94 Ind. 211; McMillan v. Cheeney, 30 Minn. 519, 16 N. W. 404; Thomas v. Rauer, 62 Kan. 568, 64 Pac. 80; Brown v. Cloud County Bank, 2 Kan. App. 352, 42 Pac. 593; Richardson v. Lowe, 149 Fed. 632, 79 C. C. A. 317; Mason v. Peterson (Tex. Civ. App) 232 S. W. 567, 569.

It will be seen from the foregoing authorities that limitations are not available in all cases to raise a bar against a party who is seeking to defend his rights on the ground that a contract or transaction sought to be enforced by his opponent is fraudulent.

[8] If this sale were the consequence of fraud perpetrated, it is nonenforceable in a court of conscience, a court of equity, where fraud is abhorred, and it would be of no consequence that L. B. Payne, the deceased husband and father, did remain in silence on the place and endeavored to raise a crop. He had the right, unless waived or otherwise estopped under the authorities, so to act, and then at the very last moment to assert when sued his defense of failure of consideration, and if he had that right, those who inherited the property could do likewise. But here the testimony is positive, because Mrs. Bettie H. Payne testified that she did not know of the fraud perpetrated upon her husband in inducing him to sign the notes sued upon at the time she executed the extension agreement in renewal of the notes executed by H. B. Payne. 8 C. J. 751; Wheelock v. Berkeley, 138 Ill. 153, 27 N. E. 942, 8 C. J. 444; Tyler v. Anderson, 106 Ind. 185, 6 N. E. 600; Delong v. Barnes, 45 Ohio St. 237, 12 N. E. 735; First Nat. Bank of Dalton v. Black, 108 Ga. 538, 34 S. E. 143; Hunt v. Rumsey, 83 Mich. 136, 47 N. W. 105, 9 L. R. A. 674; Earle v. Robinson, 157 N. Y. 683, 51 N. E. 1090; Adams v. Ashman, 203 Pa. 536, 53 Atl. 375; Strickland v. Graybill, 97 Va. 602, 34 S. E. 475; Gilpin v. Machine Co., 25 Okl. 408, 108 Pac. 382, 9 L. R. A. (N. S.) 477; 3 R. C. L. 1107; Hutchison v. Stanley, 88 Kan. 739, 129 Pac. 1180; Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673; Gilpin v. Netograph Machine Co., 25 Okl. 408, 108 Pac. 382, 29 L. R. A. (N. S.) 477; Casner v. Hoskins, 64 Or. 254, 128 Pac. 841, 130 Pac. 55; Harfst v. State Bank of El Campo, 56 Tex. Civ. App. 31, 119 S. W. 694; Comings v. Leedy, 114 Mo. 454, 21 S. W. 804; Didlake v. Robb, Fed. Cas. No. 3899; Kelly's Heirs v. Allen, 34 Ala. 663; Murphy v. Gay, 37 Mo. 535; Armstrong v. Walker, 200 Ala. 364, 76 South. 280; Scandinavian-American Bank v. Westby, 41 N. D. 276, 172 N. W. 665.

[9, 10] The real consideration of a renewal note is the consideration of the first, and such failure of consideration in the first may be pleaded against the recovery of the second. 8 C. J. 751, supra. Waiver of the maker of a note of the fraud in the consideration is a question of fact in a proper case to be submitted to a jury. To constitute waiver, there must be an existing right, benefit, or advantage waived, with full knowledge of its existence, with an intention to relinquish such right for a valuable consideration. Harfst v. State Bank, 56 Tex. Civ. App. 31, 119 S. W. 694; 3 R. C. L. 1106; Franklin Phosphate Co. v. Harvester Co., 62 Fla. 185, 57 South. 206, Ann. Cas. 1913C, 1247, 12 R. C. L. § 157, p. 411; 27 R. C. L. § 2, p. 904: 27 R. L. § 5, p. 908; 27 R. C. L. § 6, p. 910; 27 R. C. L. § 7, p. 912; Zundelowitz v. Waggoner (Tex. Civ. App.) 211 S. W. 598; Kennedy v. Bender, 104 Tex. 152, 135 S. W. 524; 20 Cyc. 93; Merchants' Mutual Ins. Co. v. La Croix, 45 Tex. 158; Gill v. Wilson, 2 Willson. Civ. Cas. Ct. App. §§ 380, 381; Mo. Ry. Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745; Burne v. Lee, 156 Cal. 221, 104 Pac. 438; 40 Cyc. pp. 252, 258 to 264, inc.

Then appellees have not anywhere sufficiently pleaded or shown that appellants consented to any extension of payment with full knowledge of the alleged fraudulent representations made at the time of the sale, with any intention of relinquishing any such defense that would estop him from maintaining their plea of failure of consideration, and that appellees were either misled thereby or placed in any worse position. They had knowledge of the representations made to secure the sale of the land.

[11] We do not deem it necessary to discuss and pass upon the numerous assignments and propositions that question the several rulings of the trial court in relation to the market value of the land. There is no question so difficult of proof as the market value of real estate. One rule is laid down in McLane v. Paschal, 74 Tex. 23, 11 S. W. 837. But assessment rolls are not competent evidence on a question of value of property listed upon such roll, so held in the case, supra.

We do not care to express any opinion now, from the view we take of the case, on the testimony, nor to in any way prejudge the issues relating to the facts, as the same objections may not again arise on another trial.

It is an issue for the determination of the jury as to whether or not Payne, in purchasing the land, acted upon the representations made to him by Lee, the agent in making the sale, and whether those representations were false, and induced Payne, the deceased, to purchase the land; as to whether the system could not and did not furnish water sufficient for irrigating the land, thereby destroying the value of the lands for the purposes for which they were known to be purchased, and thereby breaching the contract; as to whether the lands and their value were as represented; and all such questions raise questions of fact to be ascertained by evi-

dence to be passed upon by a jury, and for that reason placed it beyond the power of the court to instruct a verdict.

[12] Appellees insist that, should we hold, as we do, that appellees'. claim, as a matter of law, is subject to the defense of the failure of consideration, and that the limitation laws do not apply to it, appellants, for the purpose of securing the opening and concluding, in the introduction of evidence and in argument, making the admission they did. thereby waived their defense of failure of consideration theretofore pleaded, entitling appellees to the judgment rendered by the trial court. In support of such contention they cite Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663; Berry Bros. v. Fairbanks, Morse & Co., 51 Tex. Civ. App. 558, 112 S. W. 427; Meade et al. v. Logan (Tex. Civ. App.) 110 S. W. 188; Cockrell v. Ellison et al. (Tex. Civ. App.) 137 S. W. 150; Donigan v. Emmert (Tex. Civ. App.) 239 S. W. 659.

The admission is in the usual form of such admissions, to the effect:

"Plaintiffs herein have a good cause of action as set forth in their petition, except so far as it may be defeated in whole or in part by the facts in the answer of these defendants constituting a good defense which may be established on the trial of the case."

As the defense is set out in the general statement, it is not necessary here to again set it out.

There have been many opinions written on this subject, and yet it is not very satisfactorily settled by our Supreme Court. Alstin's Ex'r v. Cundiff, 52 Tex. 453; Smith v. Traders' Nat. Bank, 74 Tex. 541, 12 S. W. 221; Wolnitzek v. Lewis (Tex. Civ. App.) 183 S. W. 819–821; Frost v. Smith (Tex. Civ. App.) 207 S. W. 392; Federal Life Ins. Co. v. Wilkes (Tex. Civ. App.) 218 S. W. 591–595; Rawlings v. Ediger (Tex. Civ. App.) 231 S. W. 163.

We overrule the appellees' contention, and hold that such admission filed in this case did not justify the trial court in instructing the verdict, because a proper construction of the waiver does not have the effect claimed.

We have considered the able, exhaustive, and lengthy briefs of both parties, and have read all the authorities cited by each party, and believe there was testimony sufficient to carry this case to the jury. For the reasons given, we do here reverse the judgment of the trial court and remand the cause for another trial.

### On Motion for Rehearing.

[13] If the representations made to induce H. B. Payne, deceased, to purchase the land did not constitute fraud, then there could be no failure of consideration upon which to predicate such a defense, neither would such a defense be available unless such representations were false and Payne believed and re-

lied upon them as the inducing cause of the purchase.

The fraud must have consisted of "telling a deliberate and intentional falsehood as to a material fact," and was further made with the intention that it should be acted upon by Payne, and that Payne did rely and act upon it and has suffered injury. Now, we believe the representations made to Payne were fraudulent, but as to whether Payne relied upon them and thereby they induced him to make this purchase, nor otherwise would have made it, involves a question of fact, in the light of all the surrounding circumstances to be determined by the jury.

That with the knowledge of all the facts and representations made to Payne, at the time of his purchase, he took possession of the property, used and operated it without complaint, is a very strong circumstance going to show such representations were not the inducing cause of his purchase, yet we cannot hold as a matter of law they did not influence him, however little, in the matter.

If Payne was not induced by fraud to purchase the land, it would not be different from any other ordinary sale and purchase of land, and the defense of failure of consideration would be barred by the statute of limitation. It would be similar to the cases cited by appellee, holding such defense in the absence of fraud, and cross-actions would be subject to the bar by limitation. But, to the contrary, "limitations will not run against a claim of failure of consideration pleaded as a defense to plaintiff's suit on the contract; but when defendant pleads same, not in avoidance of such liability, but as a basis for a cross-action for damages, limitations apply to such cross-action." Ft. Smith v. Fairbanks, 101 Tex. 24; Binder v. Millikin (Tex. Civ. App.) 201 S. W. 245. The cases of Lovett v. Paschen (Tex. Civ. App.) 241 S. W. 685, and Engelman v. Anderson (Tex. Civ. App.) 243 S. W. 729, cited by appellee as authority for a contrary holding by this court, do not conflict with what we have said. The court is there speaking of cases involving quite different facts and quite different pleading. In the former case, the court, in passing on the pleading, held they constituted a cross-action for damages rather than the defense of failure of consideration. In the latter case, it was held the jury found against appellant on the issue of compromise; and, as appellant did not plead limitation or waiver, these defenses, while undoubtedly applicable, are not now available.

[14] The distinction must be kept in mind that, when a seller seeks to enforce an executory contract tainted with fraud, properly pleaded by the purchaser, and the consideration has failed, he will get no relief from a court of equity.

So it is true where the defendant in the nature of a cross-action seeks affirmative re-

lief to offset the claim, the plea of limitation will be available against him. In the case of Mason v. Peterson (Tex. Civ. App.) 232 S. W. 567, prepared with great care by this court, a writ of error has been granted by our Supreme Court, where it is now pending. It has, however, been recently followed and approved by the Supreme Court of Idaho in Frank v. Davis, 34 Idaho, 678, 203 Pac. 287.

There is nothing new set up in the motion for a rehearing that was not set up and urged originally. We have, in our own opinion, set out such facts as we have considered necessary to send the case back for another trial, because there were sufficient facts that should have gone to the jury. There are two questions presented in this motion for us to find facts upon. They present the very issues we have already said were for the determination and findings of a jury.

We will make no findings on such questions, as they might tend to embarrass upon another hearing. Said motion, as an entirety, is overruled and denied.