## BEAM *v*. COPELAND.

### Decided December 20, 1890.

*Money— When* bona fide *holder protected—Administration.*

> Where, relying upon the statutory presumption of the death of the owner
> of money, based upon his absence from the State for the period of five
> years, without proof that he was alive within that time (Mans. Dig., sec*
> 2850), the administrator of his next of kin in good faith received it from
> a bailee, charged himself with it in his account as administrator, and ex-
> pended part of it in discharging the debts of such estate before he learned
> that the owner was alive, he will be protected to the extent of the amount
> so expended.

APPEAL from *Faulkner* Chancery Court.

JOHN FLETCHER, Special Chancellor.

Jasper Copeland died in 1882, leaving his two children,.
Mrs. Canfield and Monroe Copeland, his· sole distributees.
Upon final settlement of the administration of his estate, the
share of Monroe Copeland was $1265.37 in money.   His
whereabouts being unknown, the probate court placed the
money in the hands of a master, to be held subject to its
orders.   In 1887, Mrs. Canfield filed a petition in the court,
setting forth that Monroe Copeland had been absent from the
State for five years without proof that.he was alive within
that time.   She asked that his share be paid to .her as his
next of kin.   Upon her death soon after, the money, by order
of the court, was paid to an administrator *ad litem.*   Letters
of administration on her estate were subsequently granted
to H. N. Beam, and, by order of the probate court, the
money was paid to him.

In 1888 Monroe Copeland brought suit against Beam, alleg-
ing the foregoing facts, and that he had been in Texas for
more than seven years, and knew nothing of the proceed-
ings ; he asked that Beam be held liable for the money so
received.   Beam answered that he had received the money
in his fiduciary capacity, after the probate court had decided
that it was the property of his intestate ; that with the ap-
proval of the probate court he had expended all of the

money received by him in payment of debts of her estate, except the sum of $8.36, which he still held; that such expenditures had been made in good faith and without knowledge that plaintiff was alive.

From the judgment of the court sustaining a demurrer to the answer, defendant has appealed.

Section 217 of Mansfield's Digest provides as follows:

"An estate recovered in any case in which the death of the person having right thereto shall have been presumed shall be restored to such person on making his personal appearance, or on making satisfactory proof of his being in full life, and he may recover the rents and profits of the estate during the time he may have been deprived thereof, with interest."

*House & Cantrell* for appellant.

The judgment of the probate court, declaring that Monroe Copeland was dead, and ordering the money paid to his heir or representative, was valid and binding until revoked or annulled, and was a protection to all parties dealing with the fund under said order, even if Monroe was alive at the time. 63 N. Y., 460 ; 58 Me., 225; 13 Vt., 71 ; 28 Vt., 663 ; 24 Mo., 265 ; 39 Ill., 555 ; 14 Ga., 185 ; 2 Gray, 231 ; 17 N. H., 577; 12 Wend., 533 ; 4 Denio, 119 ; 9 N. Y., 356; 29 N. Y., 106 ; 2 How., U. S., 319 ; 11 N. H., 198 : 52 Ark., 34; 33 Ark., 575 ; 34 Ark., 63 ; 31 Ark., 74; 1 Woerner, Am. L. of Adm., sec. 211 ; *id.*, sec. 212; 14 Am. Law. Rev., p. 337; 113 N. Y., 517.

Letters of administration are conclusive as to the administrator's authority. 84 N. Y., 48 ; 113 *id.*, 517. They cannot be impeached collaterally, and hence protect any one dealing with the administrator. 52 N. Y., 630 ; 36 Hun., 218 ; 7 Ind., 442 ; 27 Vt., 571 ; 17 *id.*, 165.

Where there is no statute, death is presumed at the end of seven years, etc., and probate courts, acting upon this presumption, are authorized to grant letters. 126 Pa. St., 299 ; 65 Md., 287 ; 36 Me., 176 ; 62 Mo., 121 ; 97 U. S., 628 ;

2 Best on Ev., sec. 409.   See, further, 84 N. Y., 48 ; 113 N. Y., 516; 23 Pa. St., 114; 109 *id.*, 222.

Even if appellee's contention be true, that administration on a live man's estate is a nullity, Beam cannot be held responsible after having paid out the money under the direc tion and order of the court and without notice that Copeland was alive.   He was the administrator of Copeland's heir, and not of Copeland, and he paid out the money in due course of administration of the estate of Disse Canfield, who was dead.

But sec. 2850, Mansf. Dig., settles the question.   Sec. 217 must be construed in connection with sec. 2850.   They are both taken from act November 25, 1837.   See construction placed on similar statutes in New Jersey.   46 N. J. Law., 211 ; 2 McCarter (N. J.) Chy., 119; 1 and 2 Pennington, N. J., 167; 45 N. J., 219;   1 Halst., N. J. Chy., 484; 2 Dutch., N. J., 388.

*W. S. McCain* and *G. W. Bruce* for appellee.

We make no complaint as to the probate court ordering the money paid to Beam.   We only ask that he pay the money back.   The appellee's claim is clearly within the spirit and letter of section 217.   This section requires the estate to be restored   He had no order of the probate court authorizing him to pay it out, and the payment was made in indecent haste.   He had no right to pay it out before the end of one year, and not then without the order of court.   Secs. 121, 142, 143.   The statute is explicit and imperative.   35 Ark., 180; 25 *id.*, 471 ; 15 *id.*, 41.

The statutory presumption of death is one of fact.   There is no difference between a fact presumed and a fact proved. In either case, if the man is actually alive, the probate orders are a nullity.   While judicial records import verity, questions of life and death are exceptions.   A judgment against one dead, though supposed living, is a nullity ; so a judgment which assumes the death of one who is in fact alive is a nullity.   See 1 Whart. on Ev., sec. 810 and notes ;

15 Am. Law Reg., 212; 45 Wis, 334; 18 Blatch, 1; 1 Johns. Chy., 389; 1 Otto, 238.

HEMINGWAY, J.   How far the probate court of Faulkner county was authorized to direct the distribution of the estate of Jasper Copeland, remaining in the hands of his administrator after the payment of his debts; to what extent the distribution made in pursuance of such order would be binding upon distributees at law who were not parties thereto nor notified that it would be made; and whether the distribution of the share of Monroe Copeland, made without notice to him upon the finding that he was dead when in fact he was alive, would be of any validity against him—are questions that were argued or suggested by the argument of this cause.   It is contended on behalf of the appellant that the finding that Monroe was dead, and the order directing that his share in the estate be paid to his sister, were acts within the competency of the court, and afford complete justification for all things done in pursuance thereof; while the appellee insists that such acts were without jurisdiction and void, because he was in fact alive, and had no notice of the contemplated order.

The contention involves more than one inquiry of a jurisdictional character, and opens a boundless field for speculation and argument.   In its various phases it has been considered by different courts of the highest dignity, learning and ability, with results not entirely harmonious or satisfactory.   *Melia* v. *Simmons,* 45 Wis., 334; *Lavin* v. *Bank.* 18 Blatchford, 1; *Williamson* v. *Parisien,* 1 Johns. Ch., 389; *Ins. Co.* v. *Tisdale,* 1 Otto, 238; *Thomas* v. *People,* 107 Ill., 517; 15 Am. Law Reg., 212; *Long* v. *Thompson,* 60 Ill., 27; *Bresee* v. *Stiles,* 22 Wis., 120; *Shriver* v. *State,* 65 Md., 278; *Arnold* v. *Smith,* 14 R. I., 217; 2 Woerner's Am. Law of Administration, p. 1229; *Smith* v. *Rice,* 11 Mass., 507; *Jochumsen* v. *Suffolk Savings Bank,* 3 Allen, 87; *D'Arusment* v. *Jones,* 4 Lea, 251, S. C., 40 Am. Rep., 12; *Loring* v. *Steineman,* 1 Met., 204; *Pierce* v. *Prescott,* 128 Mass., 140; *Stock-.*

*bridge* et al., *petitioners*, 145 Mass., 517; *Roderigas* v. *East River Sav. Inst.*, 63 N. Y., 460; *Plume* v. *Howard Savings Institution*, 46 N. J. Law, 211; 14 Am. Law Review, p. 337.

We withhold our judgment upon the contention; for whether we should sustain one side or the other, the same decision of this cause would be made upon an entirely different principle.

Money—*Bona fide* holder—Administrator.    As to chattels generally, the rule is, that a title cannot be acquired from one who has no title. "But, as concerns money, bank notes and current negotiable instruments lost or stolen, the rule is well established, in the courts both of England and America, that the *bona fide* holder, who has paid a valuable consideration or furnished an equivalent, shall retain title against any former owner—even against one from whom such chattel had been stolen." 2 Schouler's Personal Property, sec. 20; *Miller* v. *Race*, 1 Sm. L. Cas, *p 516, and cases.

The right of such holder is not defeated by circumstances calculated to excite suspicion or prompt inquiry, unless of such a character as proves that he acted in bad faith. *Seybel* v. *Nat. Currency Bank*, 54 N. Y., 288.

The appellant's liability grows out of the payment to him of money that should have been paid to the appellee. According to the allegations of the answer the money was paid to him as the administrator of Mrs. Canfield; he received it, believing that the appellee was dead, and that it was rightfully paid to him; while of that belief, he expended a large part of it in paying debts of his intestate. He knew, as the answer discloses, that the money came from the share of the appellee in his father's estate, but it does not disclose that he knew the appellee was not dead, or that he knew facts which, upon principles of good faith, put him upon inquiry that would have resulted in his learning it.

Although he parted with nothing of value when he received the money, he charged it against himself in his account as administrator; and before he learned that the appellee was alive, he paid out a large part of it for the estate.

By such payment he became *pro tanto* entitled to be treated as favorably as a transferee for value; and to that extent he is protected. But he is liable for as much of the money as he had not paid out when he learned that the appellee was alive, including as well what he retained for commissions as what he admitted to be in his hands.

The court erred in rendering judgment against the appellant for so much of the money received from Dawson as he had paid out as administrator before he learned that appellee was alive. The judgment will be reversed and the cause remanded, with directions to overrule the demurrer to the answer and proceed further according to law.