HAMBURG BANK *v.* AHRENS.

Opinion delivered May 17, 1915.

1.  BILLS AND NOTES—FAILURE OF CONSIDERATION—RECOUPMENT.—A defendant may show, in defense of a suit upon promissory notes, a partial failure of the consideration therefor by way of recoupment in abatement of so much of the consideration as has failed.

2.  BILLS AND NOTES—PARTIAL FAILURE OF CONSIDERATION—DEFENSE—STATUTE OF FRAUDS.—The consideration of B's signing certain notes was that appellant would turn over to him certain insurance business, this the appellant failed to do. *Held*, although the agreement was within the statute of frauds, still in a suit on the notes, it could be availed of as a defense to the notes, being a partial failure of the consideration therefor.

3.  BILLS AND NOTES—FAILURE OF CONSIDERATION—STATUTE OF FRAUDS.—Where appellant procured the execution of certain notes by one B. upon the agreement to furnish to B. enough insurance business to

enable B. to pay them off, it can not then refuse to perform its agreement because it was not in writing, and seek to hold B. to the full amount of the notes.

4. BILLS AND NOTES—PURCHASER FOR VALUE—BURDEN OF PROOF.—In an action on a promissory note, where it appears that the holder purchased the same for value, and before maturity, the burden is on the maker to show that he had notice of defense thereto, otherwise it is presumed that he is a purchaser in good faith.

Appeal from Ashley Circuit Court; *H. W. Wells,* Judge; reversed as to Doyle; affirmed as to Hamburg Bank.

### STATEMENT BY THE COURT.

The appellees executed as principal and sureties, a series of notes to the Hamburg Bank, dated December 16, 1909, in a sum equal to $50 each, with 10 per cent interest from date till maturity and bearing 10 per cent after maturity until paid, the last note being payable March 16, 1914.

The first sixteen notes were paid as they fell due and on January 6, 1913, nineteen of the notes were past due, and on that date the Hamburg Bank endorsed for value to the appellant, T. N. Doyle, the remaining sixteen notes of the series which had not matured.

When all the notes were past due, suits were brought in the justice court on each one and from the judgment an appeal was taken to the circuit court, where the cases were consolidated for trial.

The defendant admitted the execution of the notes, pleaded failure of consideration and denied that T. N. Doyle was a *bona fide* purchaser for value without notice.

It appears from the testimony that Elmo Ahrens was an insurance agent at Hamburg in 1907; greatly indebted to the companies he represented and also to the Hamburg Bank in the sum of $3,500, and that W. H. Tebbs and W. L. Blanks, officers of the bank were sureties on some of the agent's bonds to the insurance companies and secondarily liable on his indebtedness to the bank. They induced Elmo to sell his insurance agency to his cousin, Albert Ahrens, and turn over to them the proceeds of the sale.

Albert Ahrens, Ed Ahrens, appellee, and C. J. Brown, executed on August 24, 1907, and conditionally delivered, seven short term notes to said Tebbs and Blanks, for the aggregate sum of $3,500, to cover all of Elmo's indebtedness, the balance over, if any, to be paid to Albert. It developed, however, that it could not be ascertained from the account books of the agency, the amount of Elmo's indebtedness. The deal was then abandoned with Albert Ahrens, who proceeded to establish an insurance agency of his own.

In 1907 Albert agreed that the said notes for $3,500 were to be treated as having been delivered unconditionally and Tebbs and Blanks agreed to pay that part of Elmo's indebtedness, for which they were secondarily liable and turn over to him as much of the Elmo agency as they could, being only one or two companies, to which Elmo was not indebted and the renewal list, from which he could get the expiration of outstanding policies and be in a position to procure renewals thereof and agreed to throw him all the insurance business of the officers of the bank and all that could be controlled by the bank and a large portion of the insurance of the Beal-Doyle Dry Goods Co. of Little Rock.

The indebtedness of Elmo Ahrens Insurance Co. was not paid and Albert abandoned the agency and repudiated the notes dated August 24, 1907.

C. J. Brown arrived at Hamburg about the 1st of October, 1907, intending to establish an independent insurance agency and Albert Ahrens left there. Brown had a few companies, some of those that had been represented by Elmo, to whom he had paid Elmo's indebtedness, and one or two he had procured from Albert. Blanks and Tebbs induced him to take over the agency and assume the payment of the $3,500 notes toward discharging Elmo's debts. Brown owed them nothing and was not under obligations to them at the time.

As an inducement they agreed to pay off the remaining debts due by Elmo Ahrens to the companies that he had represented, so they could be transferred to

Brown's agency, and to give him sufficient patronage of the officers and customers of the bank to enable him to pay the notes as they fell due. They estimated the volume of business assured to him, listed it and demonstrated that his commissions would be sufficient for the purpose. They made no writing to that effect, however.

Brown agreed to assume the $3,500 of the notes in consideration therefor. In 1909 Brown had paid something on the notes, but was behind.

J. P. Blanks, the president of the bank, then approached him and told him that he had been talking to Ed Ahrens, the surety, and Brown's father, and the bank wanted the notes put in small amounts so that he could meet them promptly. The matter was discussed several days and the new notes made directly to the Hamburg Bank, signed by Ed Ahrens, C. J. Brown and Brown Bros., for that part of Elmo's indebtedness to the insurance companies, for which Tebbs and Blanks were sureties.

These notes were executed upon the same agreement that the Hamburg Bank would give to Brown's agency the insurance of its officers, and all other business it could control, as well as a large part of the business of Beal-Doyle Dry Goods Co., Brown's testimony showing that the latter would amount to $100 a year commission.

The series of new notes, upon part of which these suits were brought, were executed and delivered to the bank on December 16, 1909, and the old notes for the $3,500 cancelled. The officers of the bank gave their insurance business to Brown to an extent that was satisfactory for 1907, to and including the first half of 1912. The business from the Beal-Doyle Dry Goods Co. was never given to him, however, and in the summer of 1912 he was some five or six months in arrears in the payment of the notes. He then told J. P. Blanks that W. L. Blanks intended to give most of his insurance business to another agent and unless he was required to continue with the Brown agency, that he would not pay any more

of the notes. J. P. Blanks said he could not control W. L. Blanks' business and Brown refused thereafter to pay the notes, the business being taken from his agency.

On January 6, 1913, the Hamburg Bank sold to T. N. Doyle, of the Beal-Doyle Dry Goods Co., **for cash, the** sixteen notes of the series that were not matured and indorsed them to him on that day, and J. L. Blanks, the president, endorsed them personally. At this time there were nineteen of the notes due and unpaid owned by the bank, and J. P. Blanks knew that Brown had refused to pay any more of them. J. P. Blanks was a stockholder in the Beal-Doyle Dry Goods Co. and a salesman for it and had been for ten years, and was president of the appellant bank in 1913. Between the first of January, and the first of March, 1913, the bank had on deposit with said dry goods company $20,000, subject to check and T. N. Doyle was a stockholder and officer of said dry goods company during January, 1913. Blanks stated that Doyle was seeking an investment for some money which his company did not wish to pay 8 per cent on and that he recommended the purchase of these notes and endorsed them personally and said nothing whatever to Doyle about the refusal of Brown to pay them. That Doyle had no knowledge of any such refusal or of any defense to the notes, all of which were paid for by and transferred to him before maturity.

The court instructed the jury, giving, over appellant's objections, instruction numbered 1, for appellee, and refusing appellant's requested instruction numbered 19, as follows:

(1) "The court instructs the jury that all valid contracts must be based upon a good and valuable consideration; therefore if they find from the evidence in this case that the consideration for which the notes sued on were given has failed, or has not been performed on the part of the plaintiff, then they may find for the defendants.

(19) "Even if you should believe that W. L. Blanks and others, being under promise to do so, failed to give

some part of their insurance to defendant, and that such failure was not due to the defendant's inability to meet rates or take care of the insurance, this could not be considered by you as a total failure; unless it appears from a preponderance of the evidence what was the damages in dollars and cents on account of such failure, the defendants can not recoup as to partial failure, you will find for the plaintiffs the full amount of the notes sued on and interest.''

The jury returned a verdict for the defendants and from the judgments thereon, plaintiffs appealed.

*J. C. Knox, Moore, Smith & Moore* and *H. M. Trieber,* for appellants.

1. The alleged verbal agreement to throw the insurance to Brown was within the statute of frauds and not available as a defense. 103 Ark. 79. This court has ruled, 99 Ark. 458, that in an action on a note the defendant is entitled, by way of recoupment, to abatement for so much of the consideration as had failed, whenever the circumstances are such that he could maintain a cross-action for damages; but the necessary converse of this rule, *i. e.,* that recoupment can not be had upon an agreement which would not support a cross-action, is what we contend for here. 56 N. E. 713; 175 Mass. 427.

2. The court erred in refusing instruction 19 requested by appellants, to the effect that if Blanks and others, being under promise to do so, failed to give some part of their insurance to defendant, and if such failure was not due to the defendant's inability to meet rates or take care of the insurance, this could not be considered by the jury as a total failure; and unless a preponderance of the evidence showed in dollars and cents what was the damages on account of such failure, the defendants could not recoup as to partial failure. 99 Ark. 458.

3. Since the evidence shows no more than a partial failure of consideration, instruction 1, which authorized the jury to find a total want or failure of consideration, was abstract, and should not have been given.

*Williamson & Williamson,* for appellees.

1. This was not a contract "not to be performed within one year from the making thereof." It might not be performed within a year, or it might be terminated within a year. The statute of frauds applies only to contracts which, by their terms, are not to be performed within a year. 54 Ark. 199; 96 U. S. 404; 56 Ark. 629. But the statute of frauds was not pleaded in the lower court, was not an issue made, and can not avail appellants here. 32 Ark. 97; 56 Ark. 263.

2. Partial failure of consideration was available as a defense in this case. 99 Ark. 458. Instruction 19 was properly refused as misleading and confusing. It is not the province of the witnesses to fix "in dollars and cents" the amount of damages, but to state the facts only, and from the facts so stated the jury are to determine the extent of the damage.

KIRBY, J., (after stating the facts.) It is contended first that the court erred in not excluding from the consideration of the jury the testimony of the witnesses relative to the parol agreement to deliver to Brown's insurance agency the insurance business of the officers of the bank and its customers, which could be controlled by it, it being claimed that if such an agreement was made, it was not to be performed within a year and was within the statute of frauds and therefore the failure to carry it out could not constitute a failure of consideration of the notes.

(1) This court has held that a defendant may show in defense of a suit upon promissory notes a partial failure of the consideration therefor by way of a recoupment in abatement of so much of the consideration as has failed. *Webster* v. *Carter,* 99 Ark. 458; *Dutton* v. *Million,* 169 S. W. 1184, 114 Ark. 330.

Brown testified that he executed the notes upon the agreement of the bank's officers to deliver to his agency their insurance business and the insurance business of such other customers as it could control. That he did this after they had shown him a list of the business that

would come to his agency which was sufficient to take care of the notes as they matured; said that he got none of the companies of the old Ellmo agency because Brown and Tebbs had failed to pay his indebtedness to the companies and that the list of the dates of expiration of the policies was secured through Albert Ahrens' agency and "that the agency, the bank agreed to turn over to him was not worth anything at all."

After the bank refused to continue to have the insurance business of its officers and others given to the Brown Agency in accordance with the agreement, Brown declined to pay any of the remaining notes and sold his agency for barely enough to pay the indebtedness due from him to the insurance companies he represented. Brown had paid sixteen of the series of notes.

(2) The first instruction, telling the jury that if they found that the consideration for which the notes sued on was given had failed or had not been performed by the plaintiffs that they should find for the defendants, was not erroneous as being abstract, Brown's testimony showing that the officers of the bank had at first given enough business to his agency to justify his paying the notes maturing, that the agency they agreed to deliver was worthless and that they had finally failed to perform the agreement to deliver the insurance business to his agency. It may be that the agreement to deliver such insurance business, since the last of the series of notes in consideration of which it was made was not due for more than two years thereafter, was not to be performed within one year from the time it was made, but there was no legal obstacle to the performance of this agreement by the bank and its officers and certainly it was a moving consideration for the execution of the notes, the makers of which declined to pay the remaining notes after the failure of the bank to deliver any considerable portion of the insurance business in performance of its agreement.

Conceding that the agreement was within the statute of frauds and could not be enforced by Brown against a

plea thereof in another proceeding, it still could be availed of as a defense to the notes, the partial failure of consideration of which may be shown upon the theory that it was a recoupment and not a set-off or counterclaim and the right to reduce the claim sued on continued as long as plaintiffs' cause of action thereon existed. *State* v. *Ark. Brick & Mfg. Co.,* 98 Ark. 129.

(3)   If the bank was allowed to procure the execution of these notes upon agreement to furnish enough insurance business to the agency to enable its manager to pay them off and then refuse to perform its agreement because it was not in writing and in contravention of the statute of frauds and collect the notes notwithstanding, it would be perpetrating a fraud under the forms of law and the terms of a statute designed to prevent and protect against fraud.

The court did not err in refusing plaintiffs' said requested instruction 19, telling the jury that a failure to deliver part of their insurance to the defendant by Blanks and others under a promise to do so, not due to his inability to meet the rates of other companies, could not be considered as a total failure of consideration, unless it appeared from a preponderance of the testimony what was the damage in dollars and cents on account of such failure and that no recoupment could be had for a partial failure. It had already instructed the jury in appellee's requested instruction numbered 2 that if the plaintiffs partially failed to perform the consideration for which the notes sued on were given, and that by reason of the breach of contract the defendants were damaged in an amount equal to or greater than the amount of the notes sued on, they would find for the defendant and the jury must have understood from the instructions given that in order to relieve the defendants from the payment of the notes, that the bank's officers had failed to deliver enough insurance business under the agreement so to do to damage the makers of the notes in a sum equal to or greater than the amount due thereon. And there is substantial testimony from which the jury might have found

that the failure to carry out the agreement to deliver insurance business to Brown's agency caused him a loss of more than the amount of the notes sued on by the bank. Sixteen of the series of notes had already been paid and the defense is not available against the notes sued on by T. N. Doyle.

(4) It is understood that he purchased them for a valuable consideration before maturity and the testimony does not show that he had notice of any defect therein or any defense thereto. The burden was upon appellees to show after the testimony disclosed that Doyle had purchased the notes for value before maturity that he had such notice of failure of consideration as would prevent his being a *bona fide* purchaser, the presumption otherwise being that he was a purchaser in good faith without notice. *Harbison* v. *Hammons,* 113 Ark. 120, 167 S. W. 849; *Little* v. *Ark. National Bank,* 113 Ark. 72, 167 S. W. 75.

The testimony does disclose that J. P. Blanks, the president of the bank, knew of the infirmity in the notes, that he negotiated the sale of them to T. N. Doyle for the bank and that he was salesman for and a stockholder in the Beal-Doyle Dry Goods Co., a corporation in which said Doyle was largely interested. Blanks was not the agent of Doyle, however, but of the bank in the sale and he stated that he did not tell the purchaser anything about any defense to the notes or refusal of the makers to pay same, but on the contrary recommended them as a good investment. There was nothing shown in the transaction that would impute notice to the purchaser of these notes before maturity, who paid an adequate consideration therefor, of any defense thereto.

It follows that the judgment against appellant Doyle, there being no testimony to support the verdict, must be reversed and a judgment will be entered here in his favor.

The record not disclosing any prejudicial error, the judgment against the bank will be affirmed. It is so ordered.