Rose *v.* Spear.

4-2952

Opinion delivered April 3, 1933.

*James D. Head,* for appellant.
*Shaver, Shaver & Williams,* for appellee.

McHaney, J. This is an interpleader's suit brought by appellee, Sanderson, against appellant and appellee, Spear, for the purpose of having a judicial determination of the title to certain bearer bonds of the Hotel Grim Company which had belonged to appellant. Spear, who will hereafter be referred to as appellee, filed his interplea and cross-complaint against appellant, claiming to be the owner of said bonds, and that he delivered them to Sanderson to be held pending determination of the title thereto as between him and appellant, and alleged that he had acquired same "in due course," for value, and without notice of any adverse claim thereto, and that he was therefore entitled to the possession thereof. Ap-

pellant filed his answer and claim to the bonds, alleging that he was the owner and entitled to the possession thereof, and that he had parted with the possession of said bonds by connivance, fraud and theft.

Trial resulted in a finding by the court that about April 1, 1932, appellee, for value and before maturity obtained said bonds as collateral for a loan of $1,000, was an innocent purchaser and entitled to hold same to the extent of $1,000 with interest from April 1, 1932, at 6 per cent. Decree was accordingly entered, declaring a lien for such sum in appellee's favor with costs, and ordering the bonds sold to satisfy same if appellant failed to pay same in 60 days. This appeal comes from that decree.

Two grounds are urged for a reversal: (1) That appellee is not an innocent holder for value "in due course," without notice; and, (2) that appellee obtained said bonds through, or by reason of, a gambling transaction.

The facts, briefly stated, are as follows: Appellant owned, prior to April, 1932, $4,500 of bearer bonds of the Hotel Grim Company. None of the bonds were past due. The latter part of January, 1932, he was approached by a man named Wallace, who stated that he desired to purchase a mine in Nevada and would pay appellant, a real estate operator, a commission of 5 per cent. if he would handle the purchase thereof for him. The stranger, Wallace, bore a forged letter of introduction to appellant from a friend. He represented that the owner of the mine, one Roy F. Fellows, would be at the Hotel LaFayette, in Little Rock, and induced appellant to go up there with him to consummate the deal, which failed to go through because Fellows demanded $5,000 cash. They returned to Texarkana where Wallace pretended to try to borrow money from his partner and was unsuccessful, but he placed a certain amount of cash in appellant's hands, raised his commission to 10 per cent., and induced appellant to put up with Fellows said bonds to secure the balance of the cash payment of $4,000, which would be held by Fellows for one year until final payment was made by Wallace to Fellows, and the latter executed and delivered to appellant the following receipt: "Received of Andrew Rose $4,500 in bonds, Hotel Grim, Texarkana,

Texas, as collateral for $4,000 to be paid in one year from this date. Dated this 27th day of January, 1932. Nos. 81-136-174-212-289-441-442-443-444. Subject to title of land. (Signed) R. F. Fellows.'' This receipt was written by appellant, who also gave Fellows a check for $500, which was later cashed. Fellows executed and delivered a deed to certain property in Nevada, but it was found to have forfeited for taxes. Shortly thereafter, or within a few days, appellant became suspicious of the deal and of Wallace and Fellows and finally determined that he had been victimized.

Appellee acquired the bonds in a gambling house in Hot Springs about March 1, 1932, at night, from two men he did not know, but whom he had seen playing the games in the place for some nights, by lending them $1,000 on the bonds. He knew nothing about how they were acquired, or from whom, but did know Mr. Conway, of Texarkana, who was connected with the Hotel Grim. Thereafter, about April 16 he went to Texarkana to sell the bonds, but the people he wished to see were out of the city. He went back again and saw Mr. Sanderson about selling them to him. Sanderson, thinking they were the bonds appellant had owned, notified him and they all met at Sanderson's office. Appellant claimed them, and appellee left them with Sanderson, as above stated, until their title could be judicially determined.

Under this state of facts, we cannot say that the finding of the trial court is against the preponderance of the evidence. We must try the case on the record made in this case and not upon the record in another or different case that might reflect upon the credibility of either party. Under the Negotiable Instruments Law, § 7818, Crawford & Moses' Digest, a holder in due course is defined as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or

defect in the title of the person negotiating it.'' Section 7822 provides what is necessary to constitute notice of defect in title as follows: ''To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

This was the state of the law prior to the passage of the Negotiable Instruments Law. *Bothell* v. *Fletcher,* 94 Ark. 100, 125 S. W. 645; *Holland Banking Co.* v. *Booth,* 121 Ark. 171, 180 S. W. 978; *Broadway Bank* v. *Mason,* 176 Ark. 812, 4 S. W. (2d) 5. A careful examination of the testimony fails to convince that actual knowledge of any infirmity in the instruments, or defect in the title of the bearer, was brought home to appellee, or that it shows ''knowledge of such facts that his action in taking the instrument amounted to bad faith.'' As said by this court in *Beam* v. *Copeland,* 54 Ark. 70, 14 S. W. 1094: ''The right of such a holder is not defeated by circumstances calculated to excite suspicion or prompt inquiry, unless of such a character as proves that he acted in bad faith.'' Here the most that can be said from the record is that the bonds were taken at an unusual hour and at an unusual place for such transactions to occur, but we feel that these circumstances were not of such a character as to prove bad faith.

Nor can we agree with appellant that the bonds were acquired in a gambling transaction. They were not won or lost at gambling. A loan was made upon them in a gambling house. Whether the money so loaned was later lost in gambling, the proof does not show. Nor was this an issue in the court below.

Affirmed.

JOHNSON, C. J., disqualified and not participating.