KANSAS CITY LIFE INSURANCE COMPANY *v.* MILUM.

4-5090

Opinion delivered June 13, 1938.

588

*L. R. Williams, W. F. Reeves* and *A. P. Patton,* for appellant.

*Cotton & Murray* and *Shouse & Walker,* for appellees.

HUMPHREYS, J. This suit was brought in the chancery court of Boone county on September 12, 1934, by R. Emmet O'Malley, Superintendent of Insurance of the state of Missouri, in charge of the Continental Life Insurance Company, and W. F. Reeves, trustee, against R. W. Milum and Audra Milum to recover judgment on two notes then due of a series of five notes executed by R. W. Milum, dated January 26, 1932, four of the notes being in the sum of $1,500 each and one in the sum of $1,000 due twelve, twenty-four, thirty-six, forty-eight and sixty months after date, respectively, bearing interest at the rate of 8 per cent. per annum; and to foreclose a deed of trust executed by R. W. Milum and Audra Milum to secure the payment of said notes of even date on a part of lots 1 and 3 in block 4 of the town of Harrison, particularly described by metes and bounds and a part of lots 3 and 5 in block 4 of the original town of Harrison particularly described by metes and bounds, the

two pieces of property being all the real estate owned by R. W. Milum on Vine street in Harrison, Arkansas.

It was alleged in the complaint that the notes and deed of trust were executed to Buck Mays, and that W. F. Reeves was named as trustee therein; that Buck Mays assigned the deed of trust and notes described therein by a deed of assignment to the Grand National Bank of St. Louis, Missouri, and that the Grand National Bank, a corporation, assigned the notes and deed of trust to the Continental Life Insurance Company, a corporation; that the Continental Life Insurance Company was declared insolvent and its assets, including said notes and deed of trust, were placed in the hands of R. Emmet O'Malley as Superintendent of the Insurance Department of the State of Missouri, and that in his capacity as superintendent he was the owner and holder of the notes and deed of trust.

The complaint prayed for a personal judgment against R. W. Milum on the notes that were then due, and for a decree of foreclosure and the sale of the real estate therein described, and that any excess realized from the sale of the real estate be held to apply on the notes as they matured.

The appellees filed an answer on December 5, 1934, denying the material allegations in the complaint and stating the facts to be:

"That sometime prior to the closing of the Citizens Bank & Trust Company of Harrison, Arkansas, the defendant, R. W. Milum, executed and delivered his personal unsecured note in the sum of seven thousand ($7,000) dollars to said bank as evidence of indebtedness. That he was informed that said note had been assigned to the Grand National Bank of St. Louis as collateral security by the said Citizens Bank & Trust Company. That upon the request of the said Grand National Bank of St. Louis the said defendant executed and delivered his notes in the sums alleged in the complaint to Buck Mays as the agent of the said Grand National Bank of St. Louis to take the place of the said note executed and delivered to the said Citizens Bank & Trust Company

of Harrison, Arkansas. And to secure the payment of said notes when due the defendants executed and delivered to Buck Mays as agent of the said Grand National Bank their certain deed of trust.

"That it was their intention and agreement that said deed of trust should convey the following described tract of land in Harrison, Boone county, Arkansas, to-wit: A part of lots 1 and 3 in block 4 of the original town of Harrison, particularly described by metes and bounds. "That the said Buck Mays procured what purported to be, and what he represented to be the description of the said last mentioned tract of land which was in-tended to be conveyed by said deed of trust. That the same was copied on a separate sheet of paper and attached to the original deed of trust by being pasted thereon and made a part of said instrument.

"That after the filing of this suit these defendants learned that the said description included also the following described tract of land belonging to the defendants, to-wit: A part of lots 3 and 5 in block 4 of the original town of Harrison, particularly described by metes and bounds; that said description and said instrument as it now appears was procured through fraud and misrepresentation, and that it was not the intention of the parties that said deed of trust should convey the last mentioned described tract of land, and the same should be canceled as to the tract of land last above described, as a cloud upon the title of these defendants."

On the 4th day of May, 1936, appellees were given twenty days to file their amended answer which they filed on the 20th day of May, 1936, denying all material allegations in the complaint, but omitting therefrom that part of the first answer which purported to state the facts, and which purported statement of the facts are set out above.

The prayer in the first answer was for a dismissal of the complaint for want of equity, and for a reformation of the deed of trust so as to describe the first tract only, and that same be canceled so far as it purported

to convey the tract of land last described, as a cloud upon the title of appellants.

The prayer of the amended answer was for a dismissal of the complaint for the want of equity, for a reformation of the deed of trust as prayed in the first answer and, in the alternative, that if judgment should be rendered on the notes the same be declared a lien only on the lands first described, and that the complaint be dismissed as to the lands last described.

The lands first described were parts of two vacant lots, and the lands last described had valuable improvements on them.

The five notes and deed of trust were introduced in evidence.

The notes show upon their face that they were executed to Buck Mays on January 26, 1932, for a valuable consideration, and that they were negotiable.

The deed of trust shows on its face that it was executed on the same day to W. F. Reeves as trustee to secure the payment of the notes, describing them, and describing both pieces of the property. It was filed for record on the same day it was executed in the ex-officio recorder's office of Boone county, and was recorded in book 13, p. 29.

On the 7th day of November, 1932, Buck Mays executed a written assignment of the deed of trust, and the five notes to the Grand National Bank of St. Louis, which was duly acknowledged. The assignment was filed for record in the ex-officio recorder's office of Boone county on the day it was executed, and was recorded in record book 34, p. 656.

On November 15, 1932, the Grand National Bank of St. Louis, Missouri, existing under the banking laws of the United States, executed a written assignment of the deed of trust and the five notes to the Continental Life Insurance Company, a corporation existing under the laws of Missouri for one dollar and other valuable considerations paid to it by the Continental Life Insurance Company. This written assignment was duly acknowledged by its cashier, W. S. Covington, and was filed for

record in the ex-officio recorder's office of Boone county on the 17th day of November, 1932, and was recorded in record book 34, p. 656.

The records of the Continental Life Insurance Company showed that it paid to the Grand National Bank $7,060.67 for the notes and deed of trust, $7,000 being for the notes and $60.67 for the accrued interest on them on the date it purchased them.

The evidence shows that subsequent to that time the Continental Life Insurance Company became insolvent and its assets were taken over under order of court by R. Emmet O'Malley, Superintendent of Insurance of the State of Missouri, and that a portion of the assets so taken over were these notes and deed of trust.

The evidence shows that subsequently these notes and deed of trust and other assets of the Continental Life Insurance Company were sold to the Kansas City Life Insurance Company for a valuable consideration on July 25, 1936.

This cause of action was then assigned to the Kansas City Life Insurance Company, and it was substituted as plaintiff in the case, and the cause proceeded thereafter in its name, and it is the appellant here on the direct appeal, and that appellees herein prayed a cross-appeal.

The evidence shows that Buck Mays was employed by the Grand National Bank of St. Louis to collect or secure the notes it had acquired from the City National Bank of Harrison, including the note in the total sum of about $7,000 which R. W. Milum owed it, also that W. A. Mays assisted him and handled the adjustment of the Milum note; that their services in doing so were paid by the Grand National Bank of St. Louis. The evidence does not show that any part of their services were paid for by the Continental Life Insurance Company. The record before us does not disclose that the Grand National Bank and the Continental Life Insurance Company were connected in any way or that the officers of each were the officers of both.

We have concluded after a careful reading of all the evidence in the case that the notes and deed of trust sued

upon were transferred by the Grand National Bank to the Continental Life Insurance Company before maturity and for a valuable consideration and that it, the Continental Life Insurance Company, was and is an innocent purchaser of them for value, and that any fraud perpetrated by Buck Mays and W. A. Mays upon appellees was not attributable to the Continental Life Insurance Company. It follows from this finding that appellant stands in the shoes of the Continental Life Insurance Company and is an innocent purchaser just as the Continental Life Insurance Company was.

The decree rendered by the trial court was rendered on the theory that the Continental Life Insurance Company was not an innocent purchaser, holder and owner of the notes and the deed of trust before the notes matured. This finding of fact by the trial court is not supported by the weight of the evidence. The trial court also found that the last note was acquired by the Kansas City Life Insurance Company before maturity and, therefore, was an innocent purchaser thereof, and rendered judgment in favor of appellant thereon. The Kansas City Life Insurance Company as stated above acquired only such title to the notes as the Continental Life Insurance Company had and if the Continental Life Insurance Company was not an innocent purchaser for value received before maturity appellant could not be. The judgment or decree in favor of appellant for the last note together with the interest thereon, and the insurance and taxes appellant had paid on the property was correct as far as it went, but was incorrect in refusing to give appellant a judgment or decree for the amount of all the notes, the Continental Life Insurance Company, having acquired all of them for a valuable consideration before maturity and without any knowledge of the alleged fraud perpetrated upon appellees by Mays in the procurement of the notes and deed of trust.

It is true that appellees introduced testimony tending to show that the notes and deed of trust were executed in blank and delivered to W. A. Mays who was the agent and representative of the Grand National Bank

of St. Louis with the understanding and agreement that he (Mays) would insert a description of the vacant property in the deed of trust and not deliver the notes and deed of trust until the amounts and payee were inserted in the notes and the vacant property in the deed of trust and returned to them for inspection together with the unsecured note he had executed to the Citizens National Bank and Trust Company of Harrison, Arkansas.

Appellants introduced testimony tending to show otherwise, and that the notes and deed of trust were all filled out and the property intended to be conveyed as security was the property described in the deed of trust.

It is not necessary for us to set out the testimony pro and con or to decide whether fraud was committed by Mays upon appellees in the procurement of the notes and deed of trust as we have already found that the Continental Insurance Company was and is an innocent purchaser of said notes and deed of trust for value before maturity. This court said in the case of *Bank of Monette* v. *Hale,* 104 Ark. 388, 149 S. W. 845, that: "The maker of a negotiable note cannot avail of the defense that it was procured through fraud or mistake, when sued on by an innocent holder thereof."

This court also said in the case of *Newell Contracting Co.* v. *McConnell,* 156 Ark. 558, 246 S. W. 854, that: "This court is fully committed to the doctrine that one who takes negotiable paper, before maturity, as security for a debt, without notice of any defect therein or defense thereto, receives it in due course of business and is a *bona fide* holder."

The decree is correct in so far as personal judgment was rendered against R. W. Milum on the last note for $2,141.87 which amount included accrued interest and amount appellant had paid out on the property described in the deed of trust for insurance and taxes, but erred in cancelling the deed of trust and also erred in refusing to give appellant a personal judgment against R. W. Milum upon the other four notes. All these notes were due at the time the decree was rendered, and the court should have rendered personal judgment against R. W. Milum

upon the other four notes and should have declared the total judgments a lien upon all the lands described in the deed of trust, and foreclosed the lien and ordered a sale of all the lands to satisfy the personal judgments. The decree in so far as it refused to give appellant a personal judgment against R. W. Milum on the other four notes and in cancelling the deed of trust is reversed, and the cause remanded with directions to the trial court to render personal judgment against R. W. Milum on the other four notes with accrued interest thereon, and to declare a lien upon all the lands described in the deed of trust and to render a decree of foreclosure and order of sale of all the property described in the deed of trust to pay said indebtedness.

There is some question in the record before us as to whether Mrs. Audra Milum intended to or in fact did relinquish her dower interest in the lands and as to whether she did is reserved for determination of the trial court.