CRUCE *v.* DILLARD.

4-6541                                        156 S. W. 2d 879

Opinion delivered December 22, 1941.

*C. T. Sims,* for appellant.

*Paul Johnson,* for appellee.

McHANEY, J. This is a suit by appellee against appellants and one R. C. Thomas, on a promissory note, executed and delivered by appellants to said Thomas, dated October 14, 1940, and assigned and transferred by Thomas to appellee on October 16, 1940, by indorsement thereon. The amount of the note, as written in figures in the upper right-hand corner, is $275. The body of the note is in part in words and figures as follows: "For value received, I or we, jointly and severally, promise to pay to the order of R. C. Thomas, Monticello, Arkansas, one 2-door Ford sedan, '40 model, motor No. 5690525 ............................................ dollars at the office of R. C. Thomas,

Monticello, Arkansas, in 18 monthly installments of $15 each and one installment of $15, the first installment to become due and payable on or before the 10th day of November, 1940, and one installment to become due and payable on or before the 10th day of each succeeding month until the whole of said indebtedness is paid, with interest from maturity at the rate of 10 per cent. per annum.'' Other provisions were for acceleration on account of nonpayment of any installment when due and a waiver of demand, notice and protest. Several installments became due and were not paid, and appellee sued appellants and Thomas in a justice court on April 8, 1941, where a judgment was had against Thomas alone, who did not appear and defend. An appeal was taken to the circuit court where, on a trial *de novo,* an instructed verdict was returned against appellants and Thomas who again did not appear or defend, on which judgment was entered for $275 with interest. This appeal followed.

For a reversal of this judgment appellants first contend that the note sued on is not a negotiable note for the reason that it "shows on its face that it is not payable in an amount certain—that it is not due on a date certain—and the promise is to pay an automobile, which is not money.'' Section 10159 of Pope's Digest provides the requirements for an instrument to be negotiable as follows: "(1) It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand or at a fixed or determinable future time; (4) . . .; (5) . . .;'' not here involved. We think the note in question conformed to these requirements and was, therefore, a negotiable instrument. It is contended that requirements (2) and (3) of the statute are lacking. We think the note is an unconditional promise to pay a sum certain, $275, the amount written in the upper right-hand corner of said note, and that the scrivenor neglected to write in the blank space on the printed form of note used in front of the word "dollars'' the words "Two Hundred Seventy-five,'' but it was written in how the note was to be paid, that is, "in 18 monthly installments of $15 each and one installment of $15,''

which latter installment must have been a typographical error and was obviously meant to be $5 instead of $15, for 18 installments at $15 each amounts to $270 and $5 more would make the $275 indicated as the total amount of the note. The words "one 2-door Ford sedan" were printed in the form used, but was not intended by any of the joint makers of the note as what was promised to be paid, but as what the $275 was promised to be paid for, "in 18 monthly installments," etc. Nor can we agree that the time of payment is not fixed or definite. The note is payable in 18 monthly installments of $15 each and one of $5, erroneously written $15, "the first . . . to become due and payable on or before the 10th day of November, 1940," and one on or before the 10th day of each succeeding month until the whole debt is paid. No language could express a more fixed or determinable future time of payment. So we conclude that said note is a negotiable instrument within the meaning of said statute.

Another contention is that the title of Thomas to the note was defective and that appellee failed to meet the burden cast on him to prove that he acquired title thereto as a holder in due course.

For the purpose of this opinion on this point, we assume that Thomas acquired said note from appellants through fraud practiced by him in the sale to appellant, Leroy Cruce, of an automobile, the details of which are not necessary or pertinent here. But assuming that the title of Thomas was defective when he assigned the note to appellee, we think appellee met the burden cast on him by proving that he was a holder in due course. Section 10217 of Pope's Digest provides: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." Section 10213 provides when title is defective as follows: "The title of

any person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as to amount to fraud." So, assuming, as we do that Thomas' title was defective, appellee had the burden and the only burden, of proving "that he . . . acquired the title as a holder in due course," as provided in § 10217. Who is a holder in due course? The statute, § 10210, answers as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." And by § 10214 it is provided: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." We think the evidence is undisputed that appellee is a holder in due course under the provisions of these sections of the statutes. The instrument is complete and regular on its face. He acquired it before it was overdue, two days after its date, and it had not previously been dishonored. He took it in good faith and for value, having canceled a debt Thomas owed him of $127.75 with $10 accrued interest and paid Thomas $137.25 in cash by check. It is not contended that he had any actual knowledge of any infirmity in the instrument or defect in Thomas' title, nor is it shown that he had "knowledge of such facts that his action in taking the instrument amounted to bad faith." The burden was on appellants to show that appellee took the note either with actual knowledge of its infirmity or defect, or knowledge of

such facts that his action in taking it amounted to bad faith. *Harbison* v. *Hammons,* 113 Ark. 120, 167 S. W. 849; *Hamburg Bank* v. *Ahrens,* 118 Ark. 548, 177 S. W. 14; *McClain* v. *Patterson,* 177 Ark. 544, 7 S. W. 2d 8; *Kansas City Life Ins. Co.* v. *Milum,* 196 Ark. 587, 119 S. W. 2d 546. Appellants did not meet this burden. All they did was to show that the note had been procured from them by Thomas through fraud and misrepresentation, that appellee stated to some of them that Thomas was a crook. This was not sufficient. As said in *Bank of Monette* v. *Hale,* 104 Ark. 388, 149 S. W. 845: "The maker of a negotiable note cannot avail of the defense that it was procured through fraud or mistake, when sued on by an innocent holder thereof." Again we said in *Rose* v. *Spear,* 187 Ark. 168, 58 S. W. 2d 684: "A careful examination of the testimony fails to convince that actual knowledge of any infirmity in the instruments, or defect in the title of the bearer, was brought home to appellee, or that it shows knowledge of such facts that his action in taking the instrument amounted to bad faith. As said by this court in *Beam* v. *Copeland,* 54 Ark. 70, 14 S. W. 1094: 'The right of such a holder is not defeated by circumstances calculated to excite suspicion or prompt inquiry, unless of such a character as proves that he acted in bad faith.' Here the most that can be said from the record is that the bonds were taken at an unusual hour and at an unusual place for such transactions to occur, but we feel that these circumstances were not of such a character as to prove bad faith."

Here, the face of the note advised appellee that it was no doubt given in some kind of a car deal for it mentioned one 2-door Ford sedan. He no doubt surmised it was given in part at least as the purchase price of such a car, but that is not sufficient to justify a holding, in the absence of other proof, that he had knowledge of such facts, that his action in taking the note amounted to bad faith. He had no knowledge at the time that a fraud had been perpetrated by Thomas and neither did appellants, for it was some time after they had purchased the car from Thomas that they found out from the Finance Company representative that the matter had been misrepresented to them.

We, therefore, conclude that appellee was a holder in due course, and that the court correctly instructed a verdict in his favor against appellants who have their right of action against Thomas, if they are compelled to pay.

Affirmed.

MEHAFFY, J., dissents.