BROADWAY BANK OF KANSAS CITY *v*. MASON.

Opinion delivered March 26, 1928.

1. BILLS AND NOTES—DEFENSE AGAINST INNOCENT PURCHASER.—In an action to recover on notes by one who acquired them in due course for value and before maturity, the defense of a failure of consideration was not available, though such matter might have been successfully pleaded as between maker and payee.

2. BILLS AND NOTES—SALE OF PATENTED ARTICLES.—Under Crawford & Moses' Dig., §§ 7956-7958, requiring negotiable instruments in payment of patented machine, implement, substance, or instrument to show on its face that it was executed for such consideration, notes executed as part payment for emergency medicine cases bearing a registered trade-mark need not show their consideration, since a registered trade-mark does not constitute a patented article within the meaning of the statute.

3. BILLS AND NOTES—STATUTE AS TO SALE OF PATENTED ARTICLES.—Crawford & Moses' Dig., §§ 7956-7958, relating to the sale of patented articles, being both penal and criminal, must be strictly construed.

4. BILLS AND NOTES—STATUTE AS TO SALE OF PATENTED ARTICLES.—Crawford & Moses' Dig., §§ 7956-7958, requiring negotiable instruments executed as consideration for patented articles to show such fact on their face, *held* inapplicable to notes given for patent right territory; it being the sale of specific articles or things that is prohibited by the statute under the condition named.

Appeal from Faulkner Circuit Court; *W. J. Waggoner*, Judge; reversed.

*George F. Hartje*, for appellant.

*R. W. Robins*, for appellee.

McHANEY, J. Appellant brought this action against appellee to recover on four promissory notes of $200 each, two dated April 21, 1925, payable three and five months after date, and two dated April 30, 1925, payable

six and seven months after date, at the Farmers' State Bank, Conway, Arkansas, with 10 per cent. interest from date until paid. These notes were made payable to A. D. Harmon, an employee or salesman for the Home Sales Company, a Missouri corporation, and by him indorsed and delivered to J. F. Cox, president of the Home Sales Company, who in turn transferred them to appellant before maturity, in due course, as security for a loan by appellant to Cox. The consideration for the notes was the payment of $1 each upon 800 "Home Emergency Cases," consisting of a small wooden cabinet and a quantity of medicine contained in a number of bottles, with the initials on each bottle "H.E.C.," presumably representing the words "Home Emergency Case," and on each bottle is "Registered U. S. Patent Office." Appellee at the same time entered into a contract with the Home Sales Company through said Harmon, the pertinent parts of which are as follows:

"In consideration of the payment and advance of one dollar each upon eight hundred home emergency cases, the receipt of which is hereby acknowledged, the Home Sales Company agrees to furnish to the undersigned special dealer that number of home emergency cases, at $5 each, f. o. b. cars Kansas City, Missouri, during a period of one year from May 25, 1925, as they shall be ordered by him or his authorized agents, in any quantity desired, not to exceed the number specified above, upon payment of the balance of four dollars for each case ordered; the said dealer shall not be bound to pay this four dollars upon any case until he orders it delivered to him. The home emergency cases herein contracted for shall be sold by said dealer or his representatives in the following district: County, Lonoke; State, Arkansas. Number of cases, 800. We agree during the specified period not to place the home emergency cases on sale with any other dealer in the said district, and the said dealer on his part agrees not to offer them for sale outside this district without our written consent."

He was able to sell only six of the home emergency cases, for which he paid the balance due of $4 on each case. There is practically no dispute in the evidence. The proof on the part of appellant shows that it acquired the notes for value, before maturity, and without notice of any defects or infirmities therein, or of any defense the maker of said notes might have against the payee. Appellant had taken other notes from Cox under similar conditions, and these notes had been paid by the makers. The Home Sales Company was not a customer of appellant bank, and it had no business dealings with it, neither was Harmon a customer thereof, but Cox had been a customer of said bank for some two years, and was known to appellant as a reputable, responsible business man. Neither the cases nor the medicine therein was patented, but the trade-mark on the bottles, "H.E.C." had been registered in the U. S. Patent Office as a trade-mark. Appellee testified that, at the time he gave Harmon the notes, Cox was with him, and showed him how much money he could make out of the deal; that he understood that he was to give the notes and pay the company $4 per case for the medicine as he sold it, and had the exclusive right to sell same in Lonoke County; that Harmon agreed to help him sell the medicine, and he was to pay the notes out of the proceeds of the sales thereof; that he told Harmon he was no salesman, and he said he would help him sell it, but that he has not seen Harmon since; that he has not made any money out of the contract. On August 21, 1925, appellee wrote appellant that his agreement with Harmon was that he was to sell the medicine before he paid all the notes, and that he had not sold any of the medicine yet, but he believed he could sell it later in the crop season, and said: "Now if you will have patience will pay when I can. I have got me a new car, and I am going to start out to try again to sell it soon."

The case was submitted to the jury, and a verdict was returned in appellee's favor.

We think the court erred in submitting the case to the jury at all. Appellant requested the court to instruct the jury to find for it, which the court refused to do, and this is assigned as error. In our view of the case, appellant acquired the notes in due course for value and before maturity, without notice of any defects or infirmities therein. Section 52 of the Negotiable Instrument Law, § 7818, C. & M . Digest, defines a holder in due course as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

This was the law in this State prior to the Negotiable Instrument Act. *Bothwell* v. *Fletcher,* 94 Ark. 100, 125 S. W. 645; *Holland Banking Co.* v. *Booth,* 121 Ark. 171, 180 S. W. 978. Section 56 of the Negotiable Instrument Act, being § 7822 of C. & M. Digest, provides what is necessary to constitute notice of defect as follows: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." This was likewise the law in this State prior to the Negotiable Instrument Act.

We have examined the testimony carefully, and fail to find anything therein that brings to appellant actual knowledge of any infirmity in the instrument, or defect in the title of Cox thereto, or knowledge of any such facts on the part of appellant that would constitute his action in taking the instrument bad faith. Undoubtedly, as between appellee and Harmon and Cox, failure of consideration might have been successfully pleaded, as well

as fraud and misrepresentation in the procurement thereof. But, as between appellant and appellee, there must be actual knowledge of the defective title or infirmities in the instrument as defined by the statute, or knowledge of such facts as would put him on notice. It is true that appellant had taken other similar notes from Cox in the course of its business dealings with him, but it is shown that such other notes had been satisfactorily taken care of.

The principal defense relied on by appellee is that the notes were given for the purchase of a patented article or patent right territory, and are void because the notes did not show on their face that they were executed for such consideration, and it is claimed that they are void as being in violation of §§ 7956-7958, C. & M. Digest, which are as follows:

"Section 7956. Any vendor of any patented machine, implement, substance, or instrument of any kind or character whatever, when the said vendor of the same effects the sale of the same to any citizen of this State on a credit, and takes any character of negotiable instrument in payment of the same, the said negotiable instrument shall be executed on a printed form, and show upon its face that it was executed in consideration of a patented machine, implement, substance or instrument, as the case may be, and no person shall be considered an innocent holder of the same, though he may have given value for the same before maturity, and the maker thereof may make defense to the collection of the same in the hands of any holder of said negotiable instrument, and all such notes not showing on their face for what they were given shall be absolutely void.

"Section 7957. The foregoing section shall also apply to vendors of patent rights, and family rights to use any patented thing of any character whatever.

"Section 7958. Any vendor of any patented thing of any character, or any vendor of any patent right or family right to use any patented thing of any character whatsoever, who shall violate the provisions of § 7956,

shall, upon conviction, be punished by a fine of not more than three hundred dollars.''

These sections have no application to the notes in controversy, for the reason that they were not given for ''any patented machine, implement, substance, or instrument of any kind or character whatever.'' The most that can be said of the home emergency cases, for which the notes in controversy were given, is that the bottles contained in the case had a trade-mark on them which had been registered in the U. S. Patent Office. An article bearing a trade-mark which has been registered in the patent office is not a patented article, within the meaning of the aforesaid statute, and we do not feel that we can extend the provisions of the statute to cover a case not clearly included within the language of the legislative enactment.

In the recent case of *Green* v. *Jones,* 168 Ark. 423, 270 S. W. 515, the court held that the above sections of the statute did not apply to the lease of a patented article, and that the statutes are both penal and criminal, and must be strictly construed. It is there said:

''The statute is both penal and criminal. For its violation the penalty of the forfeiture of the agreed purchase price of the article sold is imposed, and the note or notes executed for the purchase price which do not conform to the requirements of the statute are rendered void in the hands of an innocent purchaser, and, in addition, a fine of $300 may be imposed for a violation of the statute. As the statute is penal and criminal, it must, for both reasons, be strictly construed.''

The court, in that case, quoted from Black on Interpretation of Laws, § 114, page 286, in support of its construction that the statute must be construed strictly. However, we are of the opinion that it does not require a strict construction of the statute to say that an article bearing a trade-mark which has been registered in the U. S. Patent Office does not come within the provisions of the above statute, and has no application thereto. Neither does the statute cover notes given for the pur-

chase of patent-right territory. It is the sale of a specific article or thing which has been patented that is prohibited by the statute under the conditions named.

We therefore conclude that the court erred in submitting the case to the jury, and that appellant's request for a peremptory instruction should have been given. The judgment of the circuit court is therefore reversed, and judgment will be entered here for appellant for the amount of the notes and interest.