BRIDGES *v.* HAROLD L. SCHAEFER, INC.

4-7329                                          179 S. W. 2d 176

Opinion delivered April 10, 1944.

*Adrian Coleman* and *George M. Booth,* for appellant.

*W. J. Schoonover* and *Geo. H. Steimel,* for appellee.

Knox, J. This is an action in replevin for the recovery of certain machinery and equipment designed for use in the manufacture of ice cream, and which was delivered to appellant by appellee in accordance with the provisions of a certain conditional sales contract executed by and between them on May 22, 1941. The description of the property is set out in the complaint as follows: "One TTP two-temperature cabinet, one 40 DHP hardening cabinet, and one Kegty 1 H. P. condensing unit." The last item, or else its chief component part, is an electric motor, and in the record it is sometimes referred to as a "Kegty 1 H. P. condensing unit," sometimes as a "1 H. P. air cooled compressor," and sometimes as a "1 H. P. electric motor." Appellant testified that because the electric current supplied at Pocahontas, the place where this machinery would be used, was such as required a single phase motor, that, notwithstanding the fact no such provision appears in the contract, it was in fact agreed between him and the salesman representing appellee that such type motor would be furnished. One of appellant's defenses to the action, as well as the cause of action, alleged by him in his cross-complaint, is founded upon an allegation that appellee agreed to deliver a single phase electric motor, but shipped instead a 3-phase motor, which could not, and which appellee well knew, could not be used in connection with the type of electric current available in the locality. The conditional sales contract, among other things, provided that (1) the equipment is sold F. O. B. factory without service wiring or plumbing; (2) that title shall remain in appellee until purchase price is paid, and that all notes, checks or other negotiable paper received by appellee are accepted subject to final payment in cash; (3) that appellee does not undertake to furnish or perform any electrical or plumbing work or materials in the installation of such equipment, and (4) that such contract alone expresses the final agreement

of the parties and supersedes all prior representations, negotiations, warranties or agreements.

Reference is made in the contract to appellee's so-called "Plan One," and the instrument provides that if such plan "is selected the purchaser will upon completion of the installation, execute seller's refinance contract . . . which shall thereupon supersede this contract."

On June 25, 1941, appellant executed and delivered to appellee an instrument which bore the caption "Chattel Mortgage," and to which there was attached a promissory note in the principal sum of $876.96, payable in 24 monthly installments of $36.54 each to the order of appellee. The chattel mortgage was not acknowledged, and in fact no form for the certificate of acknowledgment appeared thereon. Whether the note and mortgage were executed in conformity with "plan one," referred to in the conditional sales contract, is not clear. The amounts set out in the note and mortgage do not agree with those applicable to "plan one" as described in the conditional sales contract. The note and mortgage were transferred by appellee to Minneapolis Securities Corp. on August 1, 1941, but later, after default by appellant, the same were repurchased by appellee.

Appellant admits that by means of a memorandum mailed to him by appellee on June 30, 1941, and also through an invoice mailed to him on August 26, 1941, he became fully aware of the fact that appellee was shipping a 3-phase motor. After this motor arrived, and before appellant accepted delivery thereof, appellant wrote appellee a letter, dated September 4, 1941, complaining of the delay in shipping, and advising that he would expect compensation for damages caused to him "by reason of . . . failure . . . to deliver . . . in reasonable time after the order was made." He made no complaint that the wrong type of motor had been sent. Appellee replied in due course, stating that the delay resulted from governmental regulations establishing priorities for delivery of motors. Thereafter, on or shortly before, September 11th, appellant accepted delivery of the motor, and employed Thad Barnes, an electrician, to

install the equipment. Barnes testified that he installed all of the equipment except the motor, but that it would not work when connected to the available supply of current, because it was a 3-phase and not a single phase type. At appellant's direction Barnes sent appellee a bill for his services, in which the following statement appears: "Exchanging motors. You sent three-phase motor when city current is single phase. It also had to be changed with rental motor. Wiring three pieces of equipment."

At no time prior to the filing of the answer in this action did appellant notify appellee that the motor shipped was not of the type agreed on, or make any demand for exchange thereof. The only complaint registered by him was on account of damage caused by delay in delivery, for which he stated he expected compensation.

On May 2, 1942, appellee instituted this action in replevin, based upon the conditional sales contract, the note and the chattel mortgage, all of which were referred to in the complaint, as exhibits thereto. Appellant filed an answer consisting of a general denial. He also filed a separate instrument styled "Cross Complaint," by which he sought damages in the sum of $1,000. An amendment to the cross-complaint was later filed, alleging damage in the sum of $3,000 instead of $1,000. The entire claim is based upon the allegation that appellee had shipped a 3-phase instead of a 1-phase motor. Delay in shipment is not pleaded as an element of damage.

On July 19, 1943, the court sustained a motion by appellant to require appellee to elect whether it claimed possession under the conditional sales contract or under the mortgage, and appellee, thereupon, elected to proceed under the mortgage. Appellant on July 18th had filed an amendment to his answer and cross-complaint, alleging that the note sued on was executed for the purchase price of a patented machine, and not having been executed on a printed form showing such fact the same was void under the provisions of § 10348 of Pope's Digest. An oral demurrer to this amendment was offered by appellee and was sustained by the court on July 19th,

following appellee's election to proceed under the mortgage.

The case was called for trial on July 21st and, after a jury was empaneled, appellant asked leave to amend his cross-complaint so as to seek damage on account of the delay in the delivery of the equipment. This motion was by the court denied.

From a judgment based upon a directed verdict in favor of appellee, appellant prosecutes this appeal.

Appellant, by an amendment to his answer and cross-complaint pleaded that the note and mortgage were void under § 10348 of Pope's Digest, because they represented part of the purchase price of a patented machine, which fact was not disclosed on the face of such instrument. Appellant urges as a ground for reversal that the court erred in sustaining appellee's demurrer to this amendment.

Because the statute is both penal and criminal it must be strictly construed. *Broadway Bank of Kansas City* v. *Mason,* 176 Ark. 812, 4 S. W. 2d 5; *Green* v. *Jones,* 168 Ark. 423, 270 S. W. 515.

In the case of *J. B. Colt Co.* v. *Mitcham,* 172 Ark. 55, 287 S. W. 1008, Mr. Justice HART said: "This court is committed to the doctrine that the main purpose of the act was to enable the maker of a negotiable instrument, given for patent rights or patented articles, to make the same defense thereto against any holder thereof that could be made against the original holder or party to whom it was given. *Roth* v. *Merchants' & Planters' Bank,* 70 Ark. 200, 66 S. W. 918, 91 Am. St. Rep. 80; *Warmack* v. *Askew,* 97 Ark. 19, 132 S. W. 1013; and *Brenard Mfg. Co.* v. *McRee's Model Pharmacy,* 171 Ark. 978, 287 S. W. 187. Hence it is held in these cases that the failure to comply with the statute does not affect the validity of the sale, but renders only the note absolutely void.

"It has been held further, that, though the note may be void, the vendor may recover whatever may be due him on the contract of sale from the vendee. In the case of *Roth* v. *Merchants' & Planters' Bank,* 70 Ark. 200, 66

S. W. 918, 91 Am. St. Rep. 80, to support the principle of law controlling the decision, the case of *Iron Mountain & Helena Railroad* v. *Stansell,* 43 Ark. 275, and other cases of like character, are cited. In the Stansell case it was held that, in an action for money due on a contract, change tickets issued by the defendant in violation of the statute and delivered in payment of the debt, though illegal, may be used as evidence of the amount due on the contract. The court said that they were a written confession that the maker had received the value expressed in them.''

Again in the case of *Brenard Mfg. Co.* v. *McRee's Model Pharmacy, Inc.,* 171 Ark. 978, 287 S. W. 187, Mr. Justice HART said: ''It is true that the suit was originally brought on the note, but subsequently the plaintiff filed an amended complaint, in which a recovery was sought alone upon the contract.

''This court has said that the object of the statute in question was to save a vendee of any patented article all the defenses that he might have to an action on his note for the purchase money, and to prevent the loss thereby by transfer of the note to an innocent holder before maturity. Hence it was held that the failure to comply with the statute does not affect the validity of the sale, and that, though the note may be void, the seller may recover whatever may be due him on the contract of sale from the purchaser. *Roth* v. *Merchants' & Planters' Bank,* 70 Ark. 200, 66 S. W. 918, 91 Am. St. Rep. 80, and *Warmack* v. *Askew,* 97 Ark. 19, 132 S. W. 1013. While a suit upon the note and upon the contract of sale are entirely separate and distinct causes of action, the effect of the defendant's answering the complaint and defending the action entered its appearance.''

We have reached the conclusion that the allegations of the amendment were sufficient, if established, to render the note void under the statute. But it does not follow that because the note was void the court committed reversible error in sustaining the demurrer. This was not and never had been an action on the note to recover judgment for the balance thereon. It was, and at all times

had been, an action in replevin, to recover certain machinery and equipment, which appellee alleged belonged to it. By way of explanation as to how such property had come into the possession of appellant, the appellee in its complaint had alleged facts relating to transactions between it and appellant, and the execution of the conditional sales contract, the note and the mortgage. The fact that the note itself might have been void did not necessarily deprive appellee of the right to recover its own property. Defects in the form of the note could not divest appellee of its title nor vest such title in appellant.

It is true that the court on motion of appellant required appellee to elect whether it would stand upon the conditional sales contract, which contained recitals retaining title, or upon the note and mortgage, and appellee elected to stand on the latter. At the trial appellee was permitted, without objection, to introduce as evidence the conditional sales contract, the note and the mortgage. Later appellant moved to exclude the conditional sales contract, but his motion was denied. The note, even though void under the statute, was competent as evidence to establish its recitals. *J. B. Colt Co.* v. *Mitcham, supra.* The conditional sales contract and the mortgage were competent evidence of appellee's title and right of possession.

In *Brenard Mfg. Co.* v. *McRee's, etc., supra,* the action originally commenced on the note was changed by amendment to an action on the contract. First pointing out that these were two separate and distinct causes of action, the court nevertheless held that since, after such amendment, the purchaser answered and made defense to the action based upon the contract, he had thereby entered his appearance in such second action. For the reason above stated, we are of the opinion that appellee by electing to stand on the note and mortgage did not change the nature of its cause of action. At no time prior or subsequent to such election did appellee seek a money judgment on the note. After the election the action continued, as it had been begun, one in replevin, to recover certain personal property. Even if the so-called election

had in effect changed the nature of the action, still, under the authority of *Brenard* v. *McRee's,* appellant, having defended against the second action, is bound by the result thereof.

Since the invalidity of the note was not a defense to the action in replevin to recover the property, appellant's amendment pleading the invalidity thereof because of the failure to comply with the provisions of § 10348 of Pope's Digest did not set forth facts sufficient to constitute a defense, and the demurrer thereto was, therefore, properly sustained.

Appellant says that he "should have been permitted to introduce parol testimony to show the understandings and conditions that were a part of the transaction." He does not specifically point out the evidence which was excluded. The motion for new trial contains three, and only three, assignments of error, which are based upon the action of the court in refusing to permit the introduction of testimony which might be said to relate to transactions surrounding the making of the contract. These are—(a) assignment 4—to the effect that the court erred in refusing to allow appellant to testify that appellee had agreed to install the equipment, (b) assignment 6 to the effect that the court erred in refusing to permit appellant to testify that at the time he signed the mortgage the machinery was not described therein, and (c) assignment 9 to the effect that the court erred in refusing to permit appellant to introduce a carbon copy of the mortgage.

The written contract expressly provided that the "equipment was sold f. o. b. factory, without service wiring or plumbing." Evidence of a parol agreement that appellee was to install the equipment would be in direct variance with this written stipulation, and, therefore, incompetent. For that reason, and also because no such parol agreement had been pleaded, the trial court refused to permit the introduction of such testimony.

Counsel for appellant stated at the time that the purpose for offering testimony showing that the property was not described in the carbon copy of the mortgage was to establish fraud practiced on appellant by appellee.

The court properly excluded this testimony, because fraud had not been pleaded. Fraud, when relied on, must be distinctly pleaded. *Jackson* v. *Reeve,* 44 Ark. 496; *Paragould Trust Co.* v. *Willcockson,* 121 Ark. 261, 180 S. W. 986.

Although, prior to the filing of the suit appellant had advised appellee that he had been damaged on account of delay in delivery of the equipment, and had stated he would expect compensation therefor, he failed to allege this as an element of damage in his cross-complaint. During the trial he sought leave to amend his pleadings in this regard and also to allege (a) an agreement that appellee would install the equipment, and (b) fraud practiced by appellee in the transaction. The trial court in each case refused to permit the amendment. Appellant assigns the action of the court as error, but concedes that granting or denying leave to amend pleadings after trial is begun are matters largely in discretion of the trial court. We are of the opinion that the actions of the trial court did not constitute an abuse of discretion.

Appellant, while on the witness stand, was asked by his counsel if he had incurred "any expense in preparing for the installation of this machinery at the request of the plaintiff." The court sustained appellee's objection, and such ruling is assigned as error. Such expenditures, if made, doubtless would not constitute proper items of damage, but even if the contrary be conceded the action of the court in excluding such evidence cannot be considered, because the record fails to disclose the answer which it was expected the witness would give in response to such question. *St. L.-S. W. Ry. Co.* v. *Myzell,* 87 Ark. 123, 112 S. W. 203; *Boland* v. *Stanley,* 88 Ark. 562, 115 S. W. 163, 129 Am. St. Rep. 114; *Lincoln Reserve Life Ins. Co.* v. *Smith,* 134 Ark. 245, 203 S. W. 698; *Woodman of Union* v. *Anderson,* 186 Ark. 1198, 54 S. W. 2d 406; *Gray* v. *Gray,* 199 Ark. 152, 133 S. W. 2d 874.

The trial court, after reviewing the facts and declaring the law which he regarded as applicable in this case, directed the jury to return a verdict in favor of appellee. To set out such charge in full would unduly extend this

opinion. The gist thereof is contained in the following quotations taken therefrom, and set forth in chronological order in which given, to-wit: ". . . According to the testimony of the defendant he received a motor that coincided with the description contained in the conditional sales contract, it being a one-horsepower motor. He says, however, that he was to have a single-phase motor and that the motor sent him is a three-phase motor. The contract does not say what phase the motor shall be; but he says that the agent of the company, the salesman, told him that it would be a one-phase motor—single-phase motor. . . . He retained the motor that was sent him, and did not complain to the seller about it; and he claims now, by way of cross-complaint, damage. It is the duty of one who makes purchase of equipment, such as this, to do one of two things: either rescind the contract, if it is not lived up to, or retain the property and sue for his damage. . . . His measure of damage in this case would be the cost of putting the equipment in the . . . condition . . . it was contracted to be in. There is nothing to show but what there could have been an exchange of motors. The defendant has proved no legal damage, and a verdict will be instructed for the plaintiff. . . ."

The statement of facts set forth by the trial court above is supported by the record, and we conclude that the court correctly declared the law applicable thereto. Appellant's contention that the court erred in directing the verdict in favor of appellee is therefore without merit.

The judgment is affirmed.